## AFFIDAVIT OF SUSAN SIEDENTOP

COMES NOW the affiant, **SUSAN SIEDENTOP**, after being first duly sworn, and states under oath as follows:

1. I am over 18 years of age and I am otherwise competent to give this Affidavit.

2. I make all statements herein based on my personal knowledge or based on my opinion and experience as a Licensed Clinical Social Worker and Correctional Administrator.

3. Attached as Exhibit A is an up-to-date copy of my Curriculum Vitae, which includes my qualifications. I have not authored any publications in the last 10 years.

4. Attached as Exhibit B is a list of all other cases in which, during the previous 4 years, I have testified as an expert at trial or by deposition.

5. I am not being paid specifically for my testimony in this case and have never charged for giving testimony in a case. However, I am employed by the State of Tennessee Department of Correction and receive a salary pursuant to that employment.

6. I submit this testimony based on facts and information provided to me or researched by me that relates to plaintiffs' motion for preliminary injunction, but do not intend for this affidavit to encompass all testimony or opinions I may offer in this case. I understand this affidavit will be offered in conjunction with briefing regarding plaintiffs' motion for preliminary injunction, and that additional information may be brought to light which could change my statements or opinion.

7. I am a Licensed Clinical Social Worker and I am trained in the evaluation and treatment of sex offenders. I earned a Master's Degree in Social Work from the University of Illinois.

8. I am currently the Specialized Caseloads Correctional Administrator for the Community Supervision division of the Tennessee Department of Correction (hereinafter TDOC), a position I have held for the past 5 years. During the entire 9 years of my employment with TDOC, I have supervised or had oversight over registered sex offenders.

9. As the Correctional Administrator, I have statewide oversight over the Programmed Supervision Unit, which supervises all registered sex offenders for TDOC.

10. In performance of my duties, I have access to files concerning each sex offender under TDOC supervision.

11. I have been the Presiding Officer of the Tennessee Sex Offender Treatment Board (hereinafter TSOTB) since January 2017, which is administratively housed within TDOC.

12. The TSOTB is tasked by statute with developing and implementing a standardized procedure for the evaluation and identification of sex offenders, and with implementing methods of treatment intervention for sex offenders that have as a priority the physical and psychological safety of victims and potential victims, and that are appropriate to the needs of each offender under supervision of TDOC. T.C.A. § 39-13-704.

13. Under Tennessee law, after January 1, 1996, any sexual offender considered for probation or an alternative sentence is required to submit to an evaluation for treatment, risk potential, and procedures required for monitoring of behavior to protect victims and potential victims. T.C.A. § 39-13-705. The TSOTB is responsible for enforcing this requirement. T.C.A. § 39-13-704. Accordingly, the TSOTB, in Policy 14, has adopted the psychosexual evaluation (hereinafter PSE), which is widely accepted within the field of sexual offender treatment. See attached Exhibit C.

14. TDOC has adopted a second type of sexual reoffense risk assessment for the purpose of assisting supervision decisions: the Vermont Assessment of Sexual Offender Risk 2 (hereinafter VASOR-2). Prior to 2018, TDOC utilized the original VASOR assessment (hereinafter VASOR-1).

15. The PSE is a clinical evaluation completed by a licensed mental health professional specifically trained in the risk evaluation of sex offenders. The evaluation focuses on an individual's sexual development, sexual history, paraphilia interests, sexual adjustment, and recidivism risk level. It includes an objective measure, such as visual interest screening or polygraph, a full social and family history, employment/school history, case formulation, and specific treatment recommendations. Information is primarily gathered through the offender's self-reported answers to interview questions and written testing measures asked or provided by the evaluator; however, the evaluator is required to corroborate information through official court documents.

16. The VASOR-1 was composed of two scales: a 13-item reoffense risk scale, and a 6-item violence scale. The reoffense risk scale was designed for assessing the likelihood of sexual recidivism. The violence scale was designed to assess an individual's violence history and offense severity. The interaction of these two variables, reoffense risk and violence, were considered important factors for determining an individual's overall risk level McGrath & Hoke, Vermont Assessment of Sex Offender Risk Manual--Research Edition, 2001. VASOR-1 factors were selected based on an extensive literature review, the clinical experience of the authors, and the ease with which they could be scored using information routinely available in correctional case files. Most factors were static, such as prior offenses and gender of past victims. Static factors are defined as risk factors that do not change

over time, such as the offender's age at the time of the offense and the age and number of victims. That is distinguished from dynamic factors, which encompasses factors that can change over time, such as employment or drug use. A few factors were dynamic in nature, such as amenability to treatment and current lifestyle stability factors. Using empirically guided clinical judgement, weights were then assigned to each scale factor.

17. The VASOR-2 is designed to assess static risk among adult males who have been convicted of at least one qualifying sex offense as an adult. In the study that formed the basis for the assessment, the VASOR-2 Reoffense Risk Scale predicted sexual recidivism with moderate accuracy (AUC = .74) in a development sample of 1,581 adult male sex offenders . This predictive accuracy was similar to the original VASOR (AUC = .71). The VASOR-2 also showed favorable interrater reliability (ICC = .88). (McGrath, Hoke, & Lasher, Vermont Assessment of Sex Offender Risk-2 Manual, 2013)

18. Both the PSE and the VASOR assessments place sexual offenders into sexual recidivism risk categories. For the PSE, the categories are low, moderate low, moderate/average, moderate high, and high. For the VASOR-1, the categories are low, moderate, and high. For the VASOR-2, the categories are low, moderate-low, moderate-high, and high.

19. The PSE risk level is a qualitative risk score that relies on the clinical judgement of the evaluator, who after reviewing the static, dynamic, and objective measures, along with considering any mitigating factors, assigns a risk category to the offender. This risk level is not predictive, but rather a probability of prediction of reoffense, should the factors not be mitigated in some way.

20. The VASOR-1 categorizes offenders using a numerical score for each of the reoffense and violence scales, and combines those scores using the risk level table to determine the

offender's risk category. Based on a limited sample study upon which the VASOR-1 is normed, offenders designated low risk under VASOR-1 pose a 9% probability to reoffend sexually. Offenders designated moderate risk pose a 28% probability to reoffend sexually. Offenders designated high risk pose a 49% probability to reoffend sexually. (McGrath & Hoke, Vermont Assessment of Sex Offender Risk Manual--Research Edition, 2001)

21. The VASOR-2 categorizes offenders using a numerical score. The scorer rates a number of static factors that, based on the Vermont research, could lead to sexual reoffense. These factors include age at the time of community placement, prior sex offense convictions, prior sentencing dates, violations of release conditions, convictions for a non-contact sex offense, any male victims, the total number of victims, the history of consenting age-appropriate sexual relationships, substance abuse/employment/residence history, and whether the offense was committed after receiving sex offender treatment. Offenders designated low risk for VASOR-2 pose a 1.7% probability to be charged with a new sexual offense. Offenders designated moderate-low risk pose a 4.2% probability to be charged with a new sexual offense. Offenders designated moderate-high risk pose a 10.2% probability to be charged with a new sexual offense. Offenders designated high risk pose a 22.6% probability to be charged with a new sexual offense. (McGrath, Hoke, & Lasher, Vermont Assessment of Sex Offender Risk-2 Manual, 2013)

22. Currently, TDOC supervises approximately 5,366 offenders who have been convicted of sexual offenses as defined by T.C.A. § 40-39-202.

23. I currently have access to the PSE score for approximately 1,860 offenders. I currently have access to the VASOR-1 or VASOR-2 score for approximately 4,943 offenders. These numbers may include offenders no longer under TDOC supervision, because the data for

the PSE assessments encompasses 2018 to the present, and the data for the VASOR assessments encompasses 2013 to the present.

24. Reasons that an offender may not have an accessible risk assessment at this time include: the offender is female and therefore not eligible for a VASOR assessment;[1] the offender may be incarcerated, or deported; the conviction offense does not qualify for assessment; the assessment is in a paper file that is not readily available at this time; a court has ordered that no assessment be given; or an assessment record has been destroyed due to normal record keeping procedures for old documents, or by natural disaster.[2]

25. The number of risk assessments available in each risk level category are as follows (the total number of assessments does not represent the total number of assessed offenders, as some offenders were given both assessments):

   a. 3,506 (3,105 VASOR and 401 PSE) are categorized as low risk. Low risk does not mean no probability to reoffend. Low risk for VASOR-1 is categorized according to the risk level table. Low risk for VASOR-2 means that the offender received a score of 5 or less. Low risk for the PSE means that an offender presents a low probability to reoffend in a clinician's qualitative judgment based on the factors identified in paragraph 19.

   b. 1,559 (1,021 VASOR-2 and 538 PSE) are categorized as moderate-low risk. There is no moderate-low risk rating for the VASOR-1. Moderate-low risk for the VASOR-2 means the offender received a score of six to eight. Moderate-low risk for the PSE means that an offender presents a moderately low probability to

---

[1] The underlying studies for the VASOR were conducted with exclusively male participants, and therefore VASOR assessments are not a proper risk assessment tool for female offenders.
[2] One of the locations where assessment documents were kept for TDOC was recently destroyed by fire.

reoffend in a clinician's qualitative judgment based on the factors identified in paragraph 19.

c. 881 (323 VASOR-1 and 558 PSE) are categorized as moderate/average risk. Moderate/average risk for the VASOR-1 is categorized according to the risk level table. There is no average/moderate risk rating for the current TDOC static assessment, the VASOR-2. Moderate/average risk for the PSE means that an offender presents a moderate probability to reoffend in a clinician's qualitative judgment based on the factors identified in paragraph 19.

d. 606 (403 VASOR and 203 PSE) are categorized as moderate-high risk. There is no moderate-high risk rating for the VASOR-1. Moderate-high risk for the VASOR-2 means the offender received a score of nine to eleven. Moderate-high risk for the PSE means that an offender presents a moderate-high probability to reoffend in a clinician's qualitative judgment based on the factors identified in paragraph 19.

e. 251 (91 VASOR-2 and 160 PSE) are categorized as high risk. High risk for the VASOR-1 is categorized according to the risk level table. High risk for the VASOR-2 means the offender received a score of twelve to twenty-two. High risk for the PSE means that an offender presents a high probability to reoffend in a clinician's qualitative judgment based on the factors identified in paragraph 19.

26. I was made aware of the protective order in this case, and I was provided a copy of it. Attorneys in this case have answered all the questions I had about the order and explained how it applies. Pursuant to that order, I was given the identities of the plaintiffs in this case. I conducted research to determine whether each of the plaintiffs had an accessible risk assessment, and the respective risk levels for each plaintiff.

27. I did not locate risk assessments for Does #1, 2, 4, 5, 7, or 9.

28. I located a record of a risk assessment for Doe #3 and concluded based on the location where the physical file was maintained and the date of the records that the underlying risk assessment was lost in the fire referenced above. I contacted an officer at the location where any files salvaged from the fire are maintained and instructed that officer to search for Doe #3's file. The officer did not locate the file. Therefore, I believe it was one of the files lost in the fire.

29. I located a record of a risk assessment for Doe #6 that includes a VASOR-2. Doe #6's VASOR-2 score is 5, which is the highest possible score in the low category. A copy of Doe #6's VASOR-2 assessment is attached as Exhibit D.

30. I located a record of a risk assessment for Doe #8 that includes a VASOR-1 and a PSE. The PSE for Doe #8 was not conducted according to the TSOTB standard for psychosexual evaluations, but instead was conducted as a psychological evaluation. As such, it is not a reliable indicator of risk. Doe #8's VASOR-1 assessment was conducted according to all applicable standards. Doe #8 scored a 19 on the reoffense scale and a 38 on the violence scale, which places him in the upper range of the moderate category, two points away from the high-risk category. A copy of Doe #8's assessment is attached as Exhibit E.


FURTHER THE AFFIANT SAYETH NAUGHT.


Susan Siedentop
Correctional Administrator
Tennessee Department of Correction

Sworn and subscribed before me on the 23ʳᵈ day of September 2021.



# EXHIBIT A

# SUSAN SIEDENTOP

**Licensed Clinical Social Worker**    IL #149.014528    TN #5632    ● (931) 698-3961

**EDUCATION:**    **University of Illinois**    Champaign, IL
*Masters of Social Work*    May 2000

**Olivet Nazarene University**    Kankakee, IL
*Bachelor of Science in Social Work with Minor in Social Justice*    August 1997

**EXPERIENCE:**    **Tennessee Department of Correction**    Nashville, TN
*Correctional Administrator –Specialized Caseloads*    July 2016 – Present
\*Statewide oversight of Specialized Programs for Community Supervision including the Programmed Supervision Unit (Sex Offender Unit) and Community Impact Program. Oversight includes management and supervision of specialized staff for all 95 counties in TN including hiring, discipline, termination, and training. My position requires knowledge of federal and TN statutes related to the monitoring of offenders in the community including the TN Sex Offender Registry. In addition, my oversight includes writing, analyzing, and updating policy for the department as well as monitoring and analyzing audits for all areas to ensure compliance with policies and statutes. I work directly with the state vendor for GPS, as well as with the agency compliance division and state procurement in assisting in the development of the state RFP and contract for electronic monitoring and more recently, Community Corrections. Other responsibilities include working with the department's legislative liaison and Assistant Commissioner of Community Supervision on drafting legislation proposals for the monitoring of sex offenders in the community, as well as work as a subject matter expert on sex offenders. I work with local courts including judges, district attorney generals, public defenders, and private defense attorneys on matters under my area of oversight. I work with the TN Board of Parole to monitor parolees under my area of oversight. I also testify in local court hearings, when requested, as a subject matter expert on the supervision of sex offenders.

**State of Tennessee**    Nashville, TN
*TN Sex Offender Treatment Board - Presiding Officer*    Jan 2017 – Present
\*Administratively housed in the TN Department of Correction, I was appointed by Commissioner Tony Parker to be the Presiding Officer of this legislatively mandated board. I am responsible for the management of the board including all 13 members from various state interests. Oversight includes administrative responsibilities such as writing, analyzing, and presenting policy to the Board, scheduling all board meetings, preparing agendas, presiding over meetings, and ensuring all paperwork is in order and correctly filed with the Secretary of State and State Comptroller's office. Clinical responsibilities include scheduling, monitoring, and implementing the mandated clinical audits of all approved sex offender treatment evaluators and providers statewide. As a Board approved provider, I am authorized to conduct sex offender risk evaluations and, in my current position, train other evaluators and ensure that sex offender risk evaluations and treatment is conducted in a manner that fits best practices for this population. I have testified before the state judiciary committee on behalf of the agency and the Sex Offender Treatment Board. I work with community stakeholders including evaluators, providers, district attorney generals, public defenders, private defense attorneys, and judges on matters related to the evaluation of sex offender risk and sex offender treatment needs. I am a member of ATSA – Association for the Treatment of Sexual Abusers which is an international, multi-disciplinary organization that promotes sound research, evidence-based practice, public policy, and collaborative community strategies that lead to the effective assessment, treatment, and management of individuals who have sexually abused or are at risk to abuse.

**Tennessee Department of Correction**    Nashville, TN
*Probation/Parole Officer – Probation/Parole Manager*    May 2012 – July 2016
\*carried a dual caseload of sex offender and regular intensive offenders working to ensure successful re-entry into the community. I was later promoted to the Probation Parole Manager of Specialized Caseloads for District 51 which covers eight counties in lower Middle TN. In this role, I assisted in re-writing the standards of supervision for sex offenders as well as updating policy to ensure best practices.

# SUSAN SIEDENTOP

Licensed Clinical Social Worker    IL #149.014528    TN #5632    ● (931) 698-3961

**PROFESSIONAL AFFILIATIONS:** **AWEC** – *Association of Women Executives in Corrections*
**NASW** – *National Association of Social Workers*
**ACA** – *American Correctional Association*
**APPA** – *American Probation & Probation Association*
**ATSA** – *Association for the Treatment of Sexual Abusers*

# EXHIBIT B

**Past Testimony**

- *State of Tennessee vs. Gary Wayne King,* No. 15-CR169 (Williamson Co. Gen. Sess. Ct.)
- *State of Tennessee vs. Loren Charles Janosky,* Nos. 2018-C-1992 and 2018-C-1793 (Davidson Co. Crim. Ct. Div. IV)

**Potential Future Testimony**

- *M.E. v. Indiana Department of Corrections,* No. 84D02-1407-CT-5562. (Ind. Super. Ct. Vigo)

# EXHIBIT C

**TENNESSEE SEX OFFENDER TREATMENT BOARD**

**POLICY NO. 14**

**Sex Offender Risk Evaluation Standard**

**Purpose:**
To establish a standard for the completion of sex offender risk evaluations.  This policy is in effect for all Approved Evaluators regardless of the payment method for the evaluation.

The completion of a sex offender risk evaluation, commonly known as a Psychosexual Evaluation, requires the following:

- The evaluation will identify the level of risk for re-offense, the offender's pattern of deviant arousal (what type of sexual offense is the offender at risk to commit), amenability to treatment, and risk management strategies specific to the offender.
- A complete review of records obtained through the court, the investigating agency, DCS, TDOC, and the client.  Any and all medical information provided by the offender must be verified through collateral sources such as the medical facility, diagnosing authority, or institution.
- Face-to-face clinical interviews in which the clinician identifies the presence of dynamic and static risk factors supported by literature to be associated with risk.  The clinical interview shall be conducted in a manner that allows the clinician sufficient time and information to determine the presence and development of risk factors associated with the offender who is the subject of the assessment.  General risk factors that cannot be applied directly to the offender should not be listed in the report.
- A complete social and sexual history including examining any concerns developed in childhood, intimacy deficits, attitudes and distortions, negative peer influences, emotional and sexual self-regulation and any other dynamic variables that may impact the offender's risk to re-offend sexually or behaviorally.  The sexual history shall comprise a significant portion of the clinical interview and report.
- An actuarial assessment tool (i.e. Static 99) to identify offender's current risk level.
- Specialized Sex Offender Testing, (i.e. cognitive distortion scales/inventories, attitudes supportive of sexual offending scales/inventories, and sexual interest scales/inventories).  While this testing provides information that may be beneficial to the clinician, this should not be a main focus of the evaluation.  Specialized Sex Offender testing is an enhancement to the clinical interview, but it should be utilized only as necessary to gather additional information.
- Objective Testing, (e.g. detecting deception, polygraph, Layered Voice Analysis, FMRI, detecting deviant interest/arousal, plethysmograph, VASI, Abel Screen, Affinity).
- A written report which includes the offender's assessed risk level and recommendations, as well as any diagnosis, if appropriate.
- The evaluation shall include corroborative information from a variety of sources and cannot rely solely on the offender's self-report.
- Multiple clinical interviews, family interviews, and non-offending spouse interviews shall be mandatory if considering a community placement.  If the offender does not sign consent to speak with family, that shall be noted in the report.  It will often be necessary to meet with the offender in person more than once to obtain a full sexual history and flesh out any details from the prior clinical interviews.

- The evaluation report shall not be withheld for payment of funds, and it shall be delivered to the requesting agency within 30 days of completing testing and interviews.

The standard for Sex Offender Risk Evaluations is to be completed Post Conviction, however, the Board recognizes that in some instances, the court may request, or the parties may agree that an evaluation needs to be completed pre-trial. In those instances, the same standard shall apply. The evaluator shall notify the court that the evaluation cannot prove guilt or innocence and that the evaluator must assume that the alleged sex offense was committed by the offender in order to properly assess risk. If the offender is unwilling or unable to participate in objective testing as noted above, the evaluator shall notify the court that the evaluation cannot be completed.

***Approved June 24, 2021***

# EXHIBIT D

# Vermont Assessment of Sex Offender Risk-2

| Name | DOB | Age | Rater | Date |
|------|-----|-----|-------|------|
| ▉▉▉ | ▉▉ | ▉▉ | Kevin Weaver | 8/3/18 |

## Reoffense Risk Scale

1. **Age at Community Placement**
   18 to 34 = 3    35 to 54 = 2    55 or older = 0
   `0`

2. **Prior Sex Offense Convictions**
   none = 0    one = 2    two or more = 3
   `2`

3. **Prior Sentencing Dates**
   three or less = 0    four or more = 1
   `0`

4. **Any Violations of Probation, Parole or Other Release Conditions During Past Five Years**
   no = 0    yes = 1
   `0`

5. **Any Convictions for Non-Contact Sex Offenses**
   no = 0    yes = 1
   `0`

6. **Any Male Victims**
   no = 0    yes = 1
   `0`

7. **Relationship to Victims**
   lived with for 30 days or more just prior to offense = 0
   nonresidential relative or acquaintance = 1    stranger = 3
   `1`

8. **Offense-Related Sexual Fixation**
   single victim and history of consenting, age appropriate sexual relationships = 0    two to four victims and history of consenting, age appropriate sexual relationships = 2    five or more victims and/or little or no history of consenting, age appropriate sexual relationships = 3
   `2`

9. **Substance Abuse During Past Five Years in Community**
   no problems = 0    some legal or social problems = 1    serious life disruptions = 2
   `0`

10. **Address Changes During Past Year**
    one or less = 0    two or more = 2
    `0`

11. **Time Employed or in School During Past Year in Community**
    60% or more = 0    59% or less = 1
    `0`

12. **Sex Offender Treatment History**
    (a) has reoffended during or after sex offender treatment, or
    (b) was incarcerated immediately after conviction for index sex offense, entered treatment, and treatment status at release was "terminated" or "dropped out"
    no = 0    yes = 1
    `0`

**Total** `5`

## Severity Factors Checklist

1. **Most Sexually Intrusive Index Sex Offense**
   a. non-contact offense ☐
   b. fondling ☑
   c. digital penetration, fellatio, or cunnilingus ☐
   d. actual or attempted penile penetration of vagina or anus ☐
   e. bizarre or ritualistic behavior ☐

2. **Most Force Used During Index Sex Offenses**
   a. non-contact offense ☐
   b. contact offense ☑
   c. force greater than necessary to gain compliance or clear threats of physical harm to victim or others ☐
   d. use of potentially deadly weapon ☐

3. **Most Physical Harm to Index Sex Offense Victims**
   a. no medical treatment required ☑
   b. injury not requiring formal medical attention ☐
   c. treated for injury and released ☐
   d. hospitalized ☐
   e. death resulting ☐

4. **Vulnerability Characteristics of the Index Offense Victims**
   a. victim age 11 or younger ☑
   b. victim age 65 or older ☐
   c. victim developmentally disabled ☐
   d. victim had a major mental illness ☐
   e. victim had a serious physical disability ☐
   f. victim had severe drug and alcohol intoxication ☐
   g. none of the above ☐

## Reoffense Risk Scale
### Total Score and Risk Category

| 0 1 2 3 4 (5) | 6 7 8 | 9 10 11 | 12 – 22 |
|---------------|-------|---------|---------|
| (Low) | Moderate Low | Moderate High | High |

Copyright © 2013
R. J. McGrath, S. E. Hoke, & M. P. Lasher

# EXHIBIT E

STATE OF TENNESSEE
DEPARTMENT OF CORRECTION

## VERMONT ASSESSMENT OF SEX OFFENDER RISK (VASOR)

| Name | ██████████ | TOMIS ID | ██████████ | Rater | ANDENI01 | Date | 07-27-16 |
|------|------------|----------|------------|-------|----------|------|----------|

### Re-offense Risk Scale

**1. Prior Sex Offense Convictions** — `0`
none

**2. Prior Adult Convictions**
(Do not count items on #1 or #3) — `1`
one

**3. VOP's and Other Court Order Violations During Past Five Years** — `0`
none

**4. Force Used During Current Offense** — `8`
force greater than necessary

**5. Relationship to Victims** — `10`
stranger

**6. Male Victim and/or History of Exhibitionism** — `0`
none

**7. Deviant Sexual Fixation** — `0`
single victim

**8. Alcohol Abuse During Past Five Years** — `0`
no problems

**9. Drug Abuse During Past Five Years** — `0`
no problems

**10. Address Changes During Past Year** — `0`
none

**11. Time Employed or in School During Past Year** — `0`
60% or more

**12. Re-offense During or After Treatment, or Terminated Unsuccessfully from Treatment** — `0`
none

**13. Amenability to Treatment** — `0`
full or partial admission

**Total** — `19`

### Violence Scale

**1. Prior Convictions for Crimes Involving Violence**
(count prior hands-on sex offense convictions) — `5`
one

**2. Prior Conviction for a Crime Involving a Potentially Deadly Weapon** — `15`
yes

**3. Force Used During Current Offense** — `8`

**4. Sexual Intrusiveness of Current Offense** — `10`
actual or attempted penetration

**5. Physical Harm to Current Victim** — `0`
no medical treatment

**6. Victim Under Age 5, Over Age 55, or Mentally or Physically Disadvantaged** — `0`
no

**Total** — `38`

### Risk Level

Re-offense Risk Score



Violence Score

CR-3823 (Rev. 04-13)

RDA 1664