UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOES #1–9, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00590 |
| | ) | Case No. 3:21-cv-00593 |
| WILLIAM LEE, in his capacity as | ) | Case No. 3:21-cv-00594 |
| Governor of the State of Tennessee, | ) | Case No. 3:21-cv-00595 |
| and DAVID RAUSCH, in his capacity as | ) | Case No. 3:21-cv-00596 |
| Director of the Tennessee Bureau of | ) | Case No. 3:21-cv-00597 |
| Investigation, | ) | Case No. 3:21-cv-00598 |
| | ) | Case No. 3:21-cv-00624 |
| Defendants. | ) | Case No. 3:21-cv-00671 |
| | ) | Judge Aleta A. Trauger |

## MEMORANDUM & PRELIMINARY INJUNCTION

The plaintiffs in these nine consolidated cases have filed a Joint Motion for Preliminary Injunction (Doc. No. 35) and an Amended Joint Motion for Preliminary Injunction (Doc. No. 45). In addition, one of the plaintiffs, John Doe #1, filed a prior Motion for Preliminary Injunction that was rendered functionally redundant by the later motions. (Doc. No. 12.) The defendants filed a Response to the motions (Doc. No. 55), and the plaintiffs filed a Reply (Doc. No. 64). For the reasons set out herein, the request for a preliminary injunction will be granted as to John Does #1, #2, #3, #4, #5, #6, #7, and #8 but will be denied as to John Doe #9, without prejudice to the court's granting such an injunction at a later date, if issues related to the pending Motion to Dismiss (Doc. No. 65) directed at his claims are resolved in his favor.

Tennessee, like many states, maintains a registry of convicted sexual offenders and imposes a number of demanding, invasive, embarrassing, and expensive requirements on the individuals who have been placed on that registry. *See Reid v. Lee*, 476 F. Supp. 3d 684, 688–93

(M.D. Tenn. 2020) (listing requirements). The plaintiffs in these case are individuals who have been placed on that registry and made subject to those requirements, despite the fact that, when they committed their offenses, the registration scheme did not exist.[1] Under the law of the Sixth Circuit, that policy is illegal. Specifically, the Sixth Circuit's published and binding opinion in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), held that Michigan's highly similar scheme, when applied to individuals whose crimes preceded the scheme's adoption, violated the constitutional prohibition on *ex post facto* criminal punishments. *See* U.S. Const., art I, §§ 9, cl.3, 10, cl. 1. Nothing about the Sixth Circuit's opinion in *Snyder* suggested that states other than Michigan have any greater right to pursue such a policy than Michigan did.

Although *Snyder* did not directly involve the State of Tennessee, the federal district courts of this state have repeatedly concluded that the same analysis applies (or, as the procedural posture in each given case called for, *likely*[2] or *plausibly*[3] applies) to Tennessee's own, very similar scheme and policies.[4] *See, e.g.*, *Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL

---

[1] For example, in 1996, Doe #1 pleaded guilty to second-degree sexual assault in Hawaii, based on a 1994 encounter that, he says, occurred between him and his girlfriend after the two, both of whom were adults, had been drinking heavily. He maintains that the prosecution was at the behest of her highly religious family, but he does not ultimately dispute that he entered a guilty plea or that, in so doing, he made a binding admission of guilt. Pursuant to his plea deal, Doe #1 was sentenced to time served and five years' probation, after which he, under the law of the time, would have been able to resume life as an ordinary citizen, albeit one with a criminal conviction. After Doe #1 moved to Tennessee, however, he discovered that, due to changes in this state's laws that occurred after his offense date, he is now subject to substantial restrictions on his ordinary life activities—including his ability to parent his children—which were not authorized repercussions for his crime at the time it was committed. (*See* Doc. No. 14-1 ¶¶ 1–6.) Other plaintiffs committed offenses even longer ago; Does #5, #6, and #8, for example, committed their crimes in the late 1970s or early 1980s. (*See* Doc. Nos. 37-1 to -8.)

[2] *See* Fed. R. Civ. P. 65.

[3] *See* Fed. R. Civ. P. 12(b)(6).

[4] The individual district court opinions finding constitutional fault with the State's policies in this area have not been entirely unanimous in their reasoning, particularly with regard to the degree to which individual variation in registrants' circumstances should affect the court's constitutional analysis. *Compare Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1203 (M.D. Tenn. 2021) (Richardson, J.) (concluding that

2

428967, at *41 (M.D. Tenn. Feb. 8, 2021) (Richardson, J.); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020) (Jordan, J.) *Reid*, 476 F.Supp.3d at 708 (Trauger, J.); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.). The question of whether Tennessee's *ex post facto* application of its sexual offender requirements to individuals like these is illegal under *Snyder* may not be entirely beyond debate, but the issue has been addressed so clearly and so many times that the court assumes that all of the attorneys and government officials involved understand the basic jurisprudential lay of the land.

The courts that have applied *Snyder* in individual Tennessee cases have frequently granted injunctive relief to the plaintiffs in those cases that allowed those plaintiffs to be spared from the registry's requirements. Nevertheless, Tennessee officials have continued to impose the state's repeatedly-held-to-be-unlawful policy on other, similarly situated individuals who have not (yet) sought and received such judicial relief. State officials, of course, are under no formal legal obligation to agree with the Sixth Circuit or to act consistently with that court's rulings when not specifically ordered to do so—even if there are, as many would argue, strong prudential considerations supporting such deference. This court, however, *is* bound to honor the

---

the plaintiffs "have not made a sufficient showing, as required, that all retroactive applications of [the registration statutes]" are unconstitutional") *with Doe v. Lee*, No. 3:21-CV-00028, 2021 WL 1907813, at *13 (M.D. Tenn. May 12, 2021) (Trauger, J.) ("[D]efendants' argument that analyses in this area must be overwhelmingly specific to the individual is simply impossible to reconcile with the governing law."). That distinction has become important in these cases, as Tennessee officials have found increasingly less substantive support for their position and have instead resorted to using the phrase "as-applied challenge" as if it is some kind of talisman to ward off constitutional obligations. As the court will explain later in this opinion, the position that individual offenders' circumstances, other than the timing and nature of their offense, determine whether a statute imposes an impermissible *ex post facto* punishment has been explicitly rejected by the U.S. Supreme Court. *See Seling v. Young*, 531 U.S. 250, 262 (2001). In any event, the court finds the distinction between "as-applied" and "facial" challenges particularly unhelpful here. Every challenge based on the retroactive application of a general criminal statute is, in some sense, an "as-applied" challenge, because it depends on the date of the challenger's underlying offense. The important question is not *if* variation between individuals matters—it always and inherently does in this area—but *what kind of* variation matters. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (noting that a challenge to a statute "obviously has characteristics of both" a facial and an as-applied challenge).

precedents of the duly empowered federal appellate court with jurisdiction over this district, and the court continues to find the grounds for distinguishing Tennessee's scheme from Michigan's to be unpersuasive, at best, for reasons that this court and others have already set forth at length. Rather than reiterating every detail of the same analysis over and over, the court will merely refer to the numerous earlier opinions for the premise that the state's policy of imposing *ex post facto* criminal punishments on some sexual offenders is unconstitutional under the currently applicable caselaw. The court's task here is merely to apply that same, frequently reiterated principle to the requests currently under consideration—namely, that Does #1 through #9 ask the court to enter a preliminary injunction forbidding Tennessee officials from applying the registry statutes to them.[5] (Doc. No. 35.)

"Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948 (3d ed. & Supp. 2019)). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). That near-requirement, though, is no obstacle here, at least for Does #1 through #8. Those

---

[5] Initially, the plaintiffs also requested a broad preliminary injunction preventing the defendants from applying the registration requirements based on *any* criminal offenses—by anyone—that occurred prior to the 2004 effective date of the current general registration framework. Such an injunction would, in effect, result in relief for numerous registrants who are not part of any of these cases. The plaintiffs, in their briefing, did little to establish why such broad preliminary relief would be legally supported in litigation that does not purport to have a class action component, and, at the initial case management conference, the plaintiffs agreed to limit their request for a preliminary injunction to the named plaintiffs. (*See* Doc. No. 41.)

plaintiffs have provided evidence establishing that their cases follow the same pattern at issue in the cases previously decided and that, therefore, their *Ex Post Facto* Clause[6] claims have a high likelihood of success for the same reasons. The nature of the protection offered by the Ex Post Facto Clause, moreover, makes the earlier cases on this issue particularly persuasive. As the U.S. Supreme Court has stressed, the protections of that Clause do not depend on "the effect that [a challenged law] has on a single individual," but rather the punitive nature of the "statute on its face." *Seling v. Young*, 531 U.S. 250, 262 (2001) (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)). As a result, the application of the Ex Post Facto Clause to a given situation can typically be ascertained simply by identifying the law at issue, placing the law in context, and piecing together the chronology of the law's adoption and the underlying criminal offense— without the need for a deep dive into any individual offender's circumstances. The likelihood of success of these plaintiffs' claims on the merits, therefore, strongly favors granting the requests of Does #1 through #8, although there is an issue related to Doe #9 that the court will discuss near the end of this opinion.

The district court must "weigh the strength of the four [preliminary injunction] factors against one another," with the qualification that irreparable harm is an "indispensable" requirement, without which there is "no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The Sixth Circuit, however, has suggested that, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). At the very least, "irreparable injury is presumed." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 649 (6th

---

[6] There are two Ex Post Facto Clauses, one of which applies to the federal government and one of which applies to the states. U.S. Const., art I, §§ 9, cl.3, 10, cl. 1. For ease of reading, however, the court will refer to the provision applicable in this case as "the" Ex Post Facto Clause.

5

Cir. 2015) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). Does #1 through #8, moreover, have provided additional evidence confirming that their registry statuses impair their lives in ways that are unlikely to be rectified by a money judgment at the end of litigation. This factor therefore favors granting a preliminary injunction.

The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The defendants argue that these factors favor denying preliminary injunctions, in light of the state's interest in protecting the safety of the public and preventing future sexual offenses. There is no meaningful evidence before the court, however, that any named plaintiff in these cases currently poses a particular threat to anyone, or that any such threat would be mitigated by requiring him to continue as a registered violent sexual offender.[7]

The plaintiffs' argument regarding the public interest is far less speculative. It is well-established that "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). Under the Constitution, a backward-looking sexual offender registry—although perhaps permissible on its own, *see Smith v. Doe*, 538 U.S. 84, 105–06 (2003)—is not a license to heap an endless parade of new and severe punishments on individuals whose long-ago offenses

---

[7] The defendants have identified "clinical risk assessments" performed by the Tennessee Department of Correction on two of the nine plaintiffs, John Does #6 and #8. Doe #6's probability of reoffending was found to be "low," and Doe #8's was found to be "moderate." The defendants state that an assessment was performed on another plaintiff, John Doe #3, but that assessment "was destroyed in a fire." Otherwise, the defendants simply rely on the unremarkable premise that some offenders on the registry do, in fact, reoffend. (*See* Doc. No. 55 at 23.) The defendants have produced no evidence, however, that any of these John Does has committed a sexual offense in the decades since the registry's adoption. Moreover, the defendants' own statistics and assessments indicate that one cannot assume that just being on the registry establishes that an individual is likely to be dangerous. Of the thousands of clinical risk assessments of sexual offenders that the defendants were able to access, *over half* resulted in a finding that the individual at issue had a "low" likelihood of reoffending. (Doc. No. 55-2 ¶¶ 23, 25.) Such evidence does not do much to establish that the court can assume, based on these plaintiffs' registry statuses, that they are dangerous, despite their decades with no documented recidivism involving sexual offenses.

carried no such consequences when committed. The framers of the Constitution chose to make that practice illegal, and the people of this country have not repealed that prohibition by constitutional amendment, despite having had nearly a quarter of a millennium in which to do so. Nevertheless, Tennessee officials continue to flout the Constitution's guarantees. Failing to enjoin Tennessee's abuse of its registry to sidestep the Constitution would therefore be a grievous injury to the public's interest in constitutional governance bound by law. Accordingly, the third and fourth factors, like the first and second, favor granting preliminary relief.

The defendants, however, have identified an additional issue with regard to the claims of Doe #9. Doe #9 used to live in Tennessee and states that he wishes to move back, but he is not currently a resident of the state. (*See* Doc. No. 45-1 ¶ 10.) He is still on Tennessee's registry, but, as a practical matter, it appears that Tennessee officials do not themselves impose particular restrictions on his day-to-day life. The defendants filed a motion arguing that Doe #9 therefore lacks standing to challenge the imposition of the registry scheme to him, and Doe #9 has filed a Response (Doc. No. 75), but, pursuant to the Second Amended Scheduling Order, the defendants still have the option to file a reply (which the court hopes they will). (Doc. No. 51 at 4.) The issues related to Doe #9's residency affect multiple aspects of the preliminary injunction analysis: they pose an additional obstacle to establishing likelihood of success on the merits; they reduce the amount of hardship he currently faces; and they even reduce, to some degree, the extent to which the public interest favors an injunction, given that the question of which unconstitutional acts that an injunction would actually prevent is more speculative. In light of these plaintiff-specific, outstanding issues, the court will not grant Doe #9 the relief he seeks at the moment. The court's denial of his request, however, will be without prejudice to the court's reconsideration of the matter alongside the pending Motion to Dismiss.

For the foregoing reasons, the plaintiffs' Amended Joint Motion for Preliminary Injunction (Doc. No. 45) is hereby **GRANTED** as to John Does #1 through #8 and **DENIED** as to John Doe #9, without prejudice to the court's reconsideration of that ruling when the court resolves the pending Motion to Dismiss. The plaintiffs' original Joint Motion for Preliminary Injunction (Doc. No. 35) and John Doe #1's Motion for Preliminary Injunction (Doc. No. 12) are **DENIED** as moot in light of their having been superseded or rendered redundant by the Amended Joint Motion.

It is hereby **ORDERED** that the defendants shall not enforce any provision of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Monitoring Act, Tenn. Code Ann. § 40-39-201 *et seq.*, against Does #1 through #8 or require those plaintiffs to comply with any portion of the Act. Each defendant shall, to the extent within his power, take such necessary steps to ensure that Does #1 through #8 are removed from Tennessee's sexual offender registry. In light of the routine nature of removals and additions to the sexual offender registry, the court finds that no cash surety is necessary "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" by this injunction. Fed. R. Civ. P. 65(c).

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge