UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOES #1–10, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00590 |
| | ) | Case No. 3:21-cv-00593 |
| WILLIAM LEE, in his capacity as | ) | Case No. 3:21-cv-00594 |
| Governor of the State of Tennessee, | ) | Case No. 3:21-cv-00595 |
| and DAVID RAUSCH, in his capacity as | ) | Case No. 3:21-cv-00596 |
| Director of the Tennessee Bureau of | ) | Case No. 3:21-cv-00597 |
| Investigation, | ) | Case No. 3:21-cv-00598 |
| | ) | Case No. 3:21-cv-00624 |
| Defendants. | ) | Case No. 3:21-cv-00671 |
| | ) | Case No. 2:22-cv-00004 |
| | ) | Judge Aleta A. Trauger |

## MEMORANDUM

Governor William Lee and Director David Rausch of the Tennessee Bureau of Investigation ("TBI") have filed a Motion to Dismiss John Doe #9's Complaint for Declaratory and Injunctive Relief (Doc. No. 65), to which Doe #9 has filed a Response (Doc. No.75), and the defendants have filed a Reply (Doc. No. 77). The defendants have also filed a Motion to Dismiss John Doe #10's Complaint for Declaratory and Injunctive Relief (Doc. No. 80), to which Doe #10 has filed a Response (Doc. No. 82), and the defendants have filed a Reply (Doc. No. 85). For the reasons set out herein, the motion directed at Doe #9's claims will be denied, and the motion directed at Doe #10's claims will be granted in part and denied in part.

### I. BACKGROUND

In 1994, the Tennessee General Assembly adopted legislation requiring the TBI to "establish, maintain, and update a centralized record system of sexual offender registration and verification information." 1994 Tenn. Pub. Laws, ch. 976 § 7(a). For clarity, the court will refer to

that law—and the enactments that amended or superseded it—as "the Act." The Act, in its original form, required registration for all individuals convicted of any one of a number of identified sexual offenses, "unless the offender had been wholly released without supervision from incarceration, probation, or parole prior to January 1, 1995." *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *1 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, C.J.) (citing 1994 Tenn. Pub. Laws, ch. 976 § 3(2)–(3)). Accordingly, there existed a subset of defendants who were—or, upon release, would become—required to register based on crimes they committed before the Act was adopted.

The Constitution's State Ex Post Facto Clause—which the court will refer to as "the Ex Post Facto Clause," because its counterpart, the Federal Ex Post Facto Clause, U.S. Const., art. I, § 9, cl.3, is not at issue in this case—provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const., art. I, § 10, cl. 1. That provision has long been construed to forbid a state legislature from retroactively "alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). The Ex Post Facto Clause's prohibition has not, however, been construed to apply to civil enactments. *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995). *But see Collins*, 497 U.S. at 41 (acknowledging that a literal reading of the language would reach all, not merely criminal, laws). Accordingly, whether the Tennessee General Assembly's retroactive application of the Act was constitutional depended on whether inclusion on the registry was considered a criminal punishment. At the time of the Act's adoption, there was no Supreme Court caselaw resolving that question. Shortly thereafter, however, the Supreme Court held that purely informational offender registry schemes—which the Act, for the most part, initially was—are generally civil and therefore can be applied retroactively. *Smith v. Doe*, 538 U.S. 84, 104 (2003).

In reaching that holding, however, the Supreme Court made clear that, even if a law purports to be civil, whether it is civil or criminal depends on the substantive features of the law itself. *Id.* at 92 ("If . . . the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it civil.'") (quoting *Kansas v. Hendricks*, 521 U.S. 346, 347 (1997)). As such, the permissibility of applying the Act to pre-registry offenses depended, and continues to depend, on what the Act actually requires.

Over the years, the Tennessee General Assembly enacted over two dozen changes to the Act, primarily to make being on the registry more restrictive of the registrant's freedom and less protective of his privacy. *See Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *1 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, C.J.) (detailing amendments). As amended, the Act treats the registry, not chiefly as an informational resource, but as the criterion pursuant to which a subset of the state's population is made subject to a complex and demanding set of regulations on their behavior, including where they can live and work. *See Reid v. Lee*, 476 F. Supp. 3d 684, 689–93 (M.D. Tenn. 2020) (Trauger, J.) (listing key restrictions and requirements). As those changes piled up, the Act expanded farther and farther beyond the borders of what the Supreme Court has held to be civil for the purposes of retroactive application. Nevertheless, Tennessee has continued applying the Act retroactively.

Tennessee was not alone in adopting an increasingly aggressive registry regime; Michigan, among other states, pursued a similar path and ended up with a similar law that, like Tennessee's, applied retroactively to some offenders. Some of the Michigan offenders required to register for pre-registry offenses came to believe that, in light of the increasingly punitive effect of being included on the registry, their registry-related obligations could no longer be fairly considered civil

3

in nature and therefore could not be applied *ex post facto*. A group of registrants therefore challenged the retroactive application of the Act, and, in 2016, the Sixth Circuit held in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), that the Michigan law was inescapably criminal in nature and therefore was subject to the Ex Post Facto Clause. Accordingly, the court held that Michigan's law could not be applied to those plaintiffs.

Tennessee's Act has been challenged pursuant to *Snyder* a number of times, and officials for the State of Tennessee have, so far, not identified any meaningful difference between Tennessee's law and Michigan's that would undermine the conclusion that Tennessee's registry regime, like Michigan's, cannot be applied to individuals whose offenses pre-dated the Act. *See, e.g.*, *Doe #1 v. Lee*, No. 3:16-CV-02862, 2021 WL 428967, at *41 (M.D. Tenn. Feb. 8, 2021) (Richardson, J.); *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020) (Jordan, J.) *Reid*, 476 F.Supp.3d at 708 (Trauger, J.); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.).

Does #1 through #10 are among the individuals who have challenged the retroactive application of the Act to them. On December 3, 2021, the court entered a preliminary injunction forbidding the defendants from enforcing the Act against Does #1 through #8. (Doc. No. 76 at 8.) Doe #9 was not included because he does not presently live in Tennessee, and, as the court held, that fact "affect[s] multiple aspects of the preliminary injunction analysis" in a way that, the court concluded, rendered granting his request for an injunction at that time premature. (*Id.* at 7.) Doe #10 was not included in the request for a preliminary injunction, likely because he was not yet part of the litigation, but he has since filed claims of his own, which the court consolidated with the

4

other plaintiffs'. The defendants now seek dismissal of Doe #9's claims for lack of jurisdiction and Doe #10's claims on the merits.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Genetek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed in this way, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary," without converting the motion into one for summary judgment. *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994); *see also Genetek*, 491 F.3d at 330. It is then the plaintiff's burden to show that jurisdiction is appropriate. *DLX*, 381 F.3d at 511.

However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6t Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *Genetek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999).

### B. Rule 12(b)(6)

5

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

The court will not repeat the now-familiar analysis that has led it and other courts to conclude that *Snyder* applies to the Act. Rather, the court will focus on the defendants' arguments why these two defendants' claims should be dismissed regardless of *Snyder*. Specifically, the defendants argue that Doe #9 lacks standing because he does not live in Tennessee and that Doe

6

#10's claim should be dismissed because he has insufficiently pleaded his claims and is not classified by the Act as automatically subject to a lifetime registration requirement, but, rather, may be able to seek removal from the registry after five years.

### A. Doe #9

Article III of the Constitution grants the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975). A party seeking to invoke the court's jurisdiction must establish the necessary standing to sue before the court may consider the merits of that party's cause of action. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). To establish standing under the Constitution, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and (b) particularized, as well as (c) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These mandatory minimum constitutional requirements—commonly known as (1) injury-in-fact, (2) causation, and (3) redressability—apply in every case.

The defendants argue that Doe #9 cannot meet the first requirement, an injury-in-fact that is imminent, not merely conjectural or hypothetical, because he does not currently live in Tennessee and has not described specific, concrete plans to move back. In his Complaint, Doe #9 describes his current situation as follows:

> [Doe #9] is currently residing in another state. . . . Although [Doe #9] does not currently live in Tennessee, his name and information currently appear on the

7

> Tennessee sex offender registry and will remain there for life. [Doe #9] intends to return to Tennessee to be closer to his and his wife's extended families. When he does, [the Act] will once again require him to comply with its restrictions and obligations for the rest of his life.

(Case No. 3:21-cv-00671, Doc. No. 1 ¶ 2.) Doe #9's expectations regarding life in Tennessee are not purely conjectural; according to the Complaint, he lived in Tennessee in the past and left as a direct response to the fallout from his registration obligation:

> [Doe #9] moved to Tennessee in 2008 and was required to register under SORA. This caused him to lose his job and that consequence, coupled with SORA's onerous restrictions, prompted [Doe #9] to move his family to another state, where he was not required to register. [Doe #9] intends to move to Tennessee. When he does, he will immediately be required to comply with [the Act] in all respects.

(*Id.* ¶ 22.) Doe #9 states that he is particularly concerned about the difficulties of complying with the Act while caring for his disabled adult stepchild, who is "wheelchair-bound" and whose "intellectual functioning is comparable to that of an eight-year-old child." (*Id.* ¶¶ 33–34.) Because the defendants have raised a facial challenge to Doe #9's standing, the court must accept that his intent to move back to Tennessee is sincere—although, of course, sincerity alone does not necessarily equate to standing.

"The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Parker v. D.C.*, 478 F.3d 370, 377 (D.C. Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975)), *aff'd sub nom. D.C. v. Heller*, 554 U.S. 570 (2008). The determinative question with regard to the defendants' motion directed at Doe #9 is therefore not whether the sanctions imposed on Doe #9 are punitive under *Snyder*; the only matter at issue is whether his stated injuries meet the minimum requirements sufficient to establish standing.

Typically, an injury—even a relatively minor one—will be sufficient to support standing if it "resembles a harm traditionally regarded as providing a basis for a lawsuit." *Ward v. Nat'l*

8

*Patient Acct. Servs. Sols.*, Inc., 9 F.4th 357, 362 (6th Cir. 2021). There is little doubt that at least some of the injuries associated with Doe #9's inclusion on the registry are of such a sort. Doe #9 complains of, among other things, reputational injuries related to his public identification as a registrant (Case No. 3:21-cv-00671, Doc. No. 1 ¶¶ 2, 40, 48–50.), and reputational injuries are often the basis of lawsuits in defamation torts. *See Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012) ("[T]he basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation.") (quoting *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001)). The caselaw confirms that, as long as all of the other ordinary prerequisites are met, "[r]eputational injury . . . is sufficient to establish an injury in fact." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 711 (6th Cir. 2015) (collecting cases); *see also Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 453 (6th Cir. 2017) ("[I]ntangible harms such as those produced by defamation . . . may certainly be concrete enough to constitute an injury in fact.") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Admittedly, registry regimes that only inflict reputational injuries, without imposing additional restrictions, have typically been held to be civil in nature and therefore not subject to the Ex Post Facto Clause. That issue, though, goes to the merits of Doe #9's claim, not the sufficiency of his injury for jurisdictional purposes.

In addition to the reputational injuries that Doe #9 continues to suffer, the Act imposes concrete legal obligations on him that he must stay out of Tennessee to avoid—which he has affirmatively pleaded that he does not want to do. Indeed, the fact that Doe #9 has, in essence, been driven to flee the state to escape the most severe aspects of the Act takes on particular salience in light of the fact that one of the reasons that the *Snyder* court found Michigan's regime to be punitive was that it "resemble[d], in some respects at least, the ancient punishment of banishment."

9

*Snyder*, 834 F.3d at 701. In that light, Doe #9's physical absence from Tennessee is not some procedural quirk that renders his claims inappropriate for resolution; it is a direct part of the injury he seeks to address. Doe "is not required to expose himself to liability" by returning to Tennessee "before bringing suit to challenge the basis" for his *de facto* banishment. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 118–19 (2007).

By way of analogy, the Sixth Circuit has stated, in the context of disability-related litigation, that a plaintiff alleging unlawful barriers to access can establish standing by showing that "he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014); *accord Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 757 (6th Cir. 2019). As at least one Circuit has held, the same logic applies to barriers to moving to or traveling through a state; if the challenged policy is what is preventing the plaintiff from doing so, then that is an injury, just as it would be if the plaintiff had been forcibly expelled. *See Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) (rejecting mootness argument because the plaintiff's "obligation to register is keeping him from returning to New Jersey, and that situation presents a real controversy"); *cf. Clements v. Fashing*, 457 U.S. 957, 962 (1982) (finding standing where plaintiffs alleged that, "but for the . . . provision they seek to challenge, they would engage in the very acts that would trigger the enforcement of the provision"). Otherwise, a plaintiff who was unlawfully hounded out of a state by a law like the Act would be placed in a Catch-22: unable to move back because of the registry, but unable to get off the registry without moving back. While Doe #9's past residence in the State of Tennessee is not itself sufficient to create standing for the purposes of prospective relief, it belies the defendants' argument that he is simply pleading a general desire to move here someday. He lived here already, he still has family here, and he wants

10

to come back. The laws forcing him to pay a steep price if he does so are injuring him, not just imminently, but now.

The defendants remind the court that "standing is not dispensed in gross" and that "a plaintiff must demonstrate standing for each claim he seeks to press." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018). The defendants interpret that to mean that Doe #9 must limit his arguments about the Act to the specific provisions currently applicable to him. Doe #9, though, is not challenging those or any other isolated provisions in and of themselves. Rather, he is challenging his inclusion on the registry—which he has standing to do—and citing the individual provisions of the Act because they are relevant the court's analysis, not because they provide the basis for additional claims. The court doubts that any registrant is, at any given moment, at imminent risk of enforcement of *every single provision* of the Act. Yet courts have allowed plaintiffs to discuss the Act as a whole in their arguments, because that is what the standard governing Ex Post Facto Clause claims calls for. *See Seling v. Young*, 531 U.S. 250, 262 (2001) (stating that Ex Post Facto Clause Claims depend on the punitive nature of the challenged law on its face, not the effect on any individual offender).

The court accordingly finds that the Complaint establishes an injury-in-fact that is actual or imminent, is fairly traceable to the Act, is particular to Doe #9, and can be remedied by injunctive relief. In order to actually prevail on his claims, Doe #9 will need to establish that the defendants are, in fact, violating the Constitution with regard to him, despite the fact that he lives outside of their jurisdiction and is not presently at risk of enforcement of the Act's most aggressive provisions. In the context of Rule 12(b)(1), however, it is sufficient that the injuries that he has alleged meet the minimum requirements of Article III standing. Because he is subject to an ongoing and present reputational injury, and because his stated desire to return to Tennessee is hampered

by the numerous restrictions he will face if he does, he has cleared that bar. The court accordingly will not grant the defendants' motion directed at the claims of Doe #9.

### B. Doe #10

Doe #10, who is not represented by the same counsel as the other plaintiffs, filed his Complaint on February 24, 2022. The Complaint provides little detail about Doe #10's situation, other than that he lives in Cumberland County, Tennessee, and is being treated as subject to the Act based on a 1991 conviction. (Case No. 2:22-cv-00004, Doc. No. 1 at 2.) Doe #10 has provided a redacted copy of the judgment in his 1991 case. That judgment shows that the court found him guilty of statutory rape following a plea of *nolo contendere* and that he received what appears to be a two-year probated sentence. (Doc. No. 1-1 at 1.) Doe #10 has also provided a TBI "Instruction Form" for sexual offenders that he was given in late 2021. (Doc. No. 2-2.)

According to the defendants, Doe #10 is subject to Tenn. Code Ann. § 40-39-207(i)(1)(A), which provides:

> If a person convicted of an offense was not required to register as an offender prior to August 1, 2007, because the person was convicted, discharged from parole or probation supervision or discharged from incarceration without supervision prior to January 1, 1995, for an offense now classified as a sexual offense, the person may file a request for termination of registration requirements with TBI headquarters in Nashville, no sooner than five (5) years from August 1, 2007, or the date the person first registered with the SOR, whichever date is later.

Tenn. Code Ann. § 40-39-207(i)(1)(A). When a registrant who is eligible to file a request for termination does so, TBI will grant the termination if he "has not been convicted of any additional sexual offense or violent sexual offense during the [five- or ten-year period, as applicable,] and the offender has substantially complied with" the Act during his period of registration. Tenn. Code Ann. § 40-39-207(c)(3); *see* Tenn. Code Ann. § 40-39-207(i)(1)(B) (incorporating procedures and standard for seeking removal after ten years to registrants eligible after five years). It is not entirely

12

clear, from Doe #10's Complaint, what happened in the years following his conviction in 1991, but he says that, "[i]n December 2021, a Cumberland County deputy sheriff contacted Doe and required him to register." (Case No. 2:22-cv-00004, Doc. No. 1 at 2.) Based on that description, it appears that Doe #10 may have effectively fallen through the cracks of the registration regime altogether until recently, meaning that he has not yet assembled the five years of substantial compliance with the Act necessary to qualify for potential removal from the registry. (*See* Case No. 2:22-cv-00004, Doc. No. 1 at 1–2.) In any event, the court accepts his account as true for the purposes of the defendants' Rule 12(b)(6) motion and will therefore treat him as presently subject to the Act.

As an initial matter, the defendants take issue with the pleading of Doe #10's Complaint, and they are correct that it is sparse and, at times, unclear. Rule 12(b)(6), however, does not test whether a complaint is comprehensive or crisply written; it tests whether the Complaint is adequate. It is, moreover, possible to plead a claim under *Snyder* quite succinctly. As the court has already noted, the constitutional prohibition on *ex post facto* criminal punishments does not depend on "the effect that [a challenged law] has on a single individual," but rather the punitive nature of the "statute on its face." *Seling*, 531 U.S. at 262 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)). There is, therefore, no need to give a detailed account of any individual plaintiff's situation to state such a claim. Nor is there any need to plead reams of facts explaining why the Act is punitive on its face, at least not at this point in the now-lengthy saga of this issue's litigation. The provisions of the Act are a matter of public record, and there are now numerous decisions analyzing those provisions under the *Snyder* framework—in addition, of course, to *Snyder* itself, which involved a very similar law.

13

If the Tennessee General Assembly passed a law retroactively adding a year to every sexual offender's sentence, it would not take more than a sentence or two to explain how that statute violated the Ex Post Facto Clause. While the law governing this type of claim may be somewhat more uncertain, the subject matter of the Ex Post Facto Clause remains narrow and straightforward. The Clause is about timing, plain and simple. Reading the Complaint, including its attachments, in the light most favorable to Doe #10's claims, he has alleged that he was convicted of a sexual offense prior to the adoption of the Act and that he is now being treated as subject to the Act based on that retroactive application. That is a sufficiently pleaded Ex Post Facto Clause claim.

As the defendants point out, Doe #10's Complaint makes a few passing references to potential constitutional issues with the Act, such as its limitations on his freedom of speech, for which he has pleaded little, if any, factual support. The defendants are correct that, insofar as Doe #10 has sought to plead additional § 1983 claims based on issues other than the Ex Post Facto Clause, he has failed to do so adequately. While there may indeed be legitimate First Amendment issues and other constitutional concerns related to the Act, Doe #10's cursory citation to the relevant protections is not sufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure. Doe #10, moreover, makes no effort to defend these aspects of his Complaint in his Response, despite the fact that they were addressed in the defendants' motion. Accordingly, the court will dismiss any claims of Doe #10 that are not based on the retroactive application of the Act.

The defendants argue next that the court should dismiss Doe #10's Ex Post Facto Clause claim because the (potentially) time-limited nature of his registration obligation should be construed to render the Act non-punitive as to an individual in his situation. At most, though, that would be an argument for summary judgment, not an argument sufficient to support a motion to

14

dismiss. Even if one assumes, for the sake of argument, that a time-limited registry obligation is less punitive than a lifetime one, dismissal would only be appropriate if it was *so much less punitive* that the plaintiff had no plausible likelihood of establishing that that it was nonetheless criminal in character. The defendants have identified no basis in *Snyder*, the caselaw applying it, or the general Ex Post Facto Clause caselaw for reaching such an ironclad conclusion.

The argument that a sanction could be rendered non-punitive simply by making it time-limited is difficult to square with the fact that many unambiguous punishments—including most prison sentences—are themselves time-limited. Indeed, incarceration is so closely identified with time limitations that imprisonment is sometimes colloquially referred to as "doing time." The court is therefore skeptical of the defendants' argument in this regard. In any event, it suffices, at this stage, to observe that it is not a sufficient argument to warrant dismissal. The court will therefore deny the motion to dismiss the claims of Doe #10.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss John Doe #9's Complaint for Declaratory and Injunctive Relief (Doc. No. 65) will be denied, the defendants' Motion to Dismiss John Doe #10's Complaint for Declaratory and Injunctive Relief (Doc. No. 80) will be granted in part and denied in part, and Doe #10's claims that are not based on the Ex Post Facto Clause will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge