# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE #1-9, | Case Nos.    3:21-cv-590 |
| | 3:21-cv-593 |
| *Plaintiffs*, | 3:21-cv-594 |
| | 3:21-cv-595 |
| | 3:21-cv-596 |
| v. | 3:21-cv-597 |
| | 3:21-cv-598 |
| WILLIAM B. LEE, *in his official capacity as* | 3:21-cv-624 |
| GOVERNOR OF TENNESSEE, *et al.*, | 3:21-cv-671 |
| | |
| *Defendants*. | District Judge Aleta A. Trauger |

# DIRECTOR RAUSCH'S OPENING BRIEF
# IN OPPOSITION TO A PERMANENT INJUNCTION

## CONTENTS

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 1

I. The Does have not proved a right to relief on their *Ex Post Facto* Clause claims. ............... 2

    A. The Court only has power to review Director Rausch's use of state authority. ............ 2

        1. The only provisions the Does can put at issue are those granting Director Rausch power to enforce Tennessee law against the Does. ................................... 2

        2. The Remand Order's causation theory lacks foundation. ..................................... 4

    B. Tennessee's regulations do not violate the *Ex Post Facto* Clause. ............................... 7

        1. Tennessee's sex offender laws are not retroactive. ................................................ 8

        2. Tennessee's sex offender laws are not punitive. ................................................... 12

II. The Does have not shown that the equities favor a permanent injunction. ......................... 19

    A. The Does cannot trace irreparable harm to Director Rausch. ..................................... 19

    B. The Does cannot establish the broader equities of an injunction................................. 20

III. Any injunction must be prohibitory and narrow. .................................................................. 22

Conclusion .................................................................................................................. 25

Master List Appendix ................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Masto*,
670 F.3d 1046 (9th Cir. 2012) ......................................................................... 17, 18

*Armour v. City of Indianapolis*,
566 U.S. 673 (2012) ...................................................................................... 10

*Atkinson v. Att'y Gen.*,
479 F.3d 222 (3d Cir. 2007) ............................................................................ 8

*Bakran v. Secretary*,
894 F.3d 557 (3d Cir. 2018) .................................................................. 8, 10, 12

*Bell Atl. Tel. Cos. v. FCC*,
79 F.3d 1195 (D.C. Cir. 1996) .......................................................................... 9

*Belleau v. Wall*,
811 F.3d 929 (7th Cir. 2016) ..................................................................... 12, 19

*Bremer v. Johnson*,
834 F.3d 925 (8th Cir. 2016) ................................................................... 7, 10, 12

*Campos v. INS*,
16 F.3d 118 (6th Cir. 1994) ........................................................................ 9, 12

*Clark v. Gwyn*,
No. M2018-00655-COA-R3-CV, 2019 WL 1568666 (Tenn. Ct. App. Apr. 11, 2019) .......... 18

*Cox v. Hart*,
260 U.S. 427 (1922) ..................................................................................... 8, 12

*Crawford v. Tilley*,
15 F.4th 752 (6th Cir. 2021) .......................................................................... 3, 5

*Crawford v. U.S. Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) .............................................................................. 6

*Cutshall v. Sundquist*,
193 F.3d 466 (6th Cir. 1999) .............................................................. 5, 7, 14, 21

*Darrah v. City of Oak Park*,
255 F.3d 301 (6th Cir. 2001) ............................................................................. 15

*De Osorio v. INS*,
   10 F.3d 1034 (4th Cir. 1993) ............................................................... 9

*Doe v. Bredesen*,
   507 F.3d 998 (6th Cir. 2007) ..................................................... *passim*

*Doe v. City of Lafayette*,
   377 F.3d 757 (7th Cir. 2004) .......................................................... 19, 30

*Doe v. Cuomo*,
   755 F.3d 105 (2d Cir. 2014) ............................................................ 17

*Doe v. Lee*,
   102 F4th 330 (6th Cir. 2024) ..................................................... *passim*

*Doe v. Miller*,
   405 F.3d 700 (8th Cir. 2005) ..................................................... *passim*

*Doe v. Settle*,
   24 F.4th 932 (4th Cir. 2022) ................................................ 13, 15, 18

*Does #1–5 v. Snyder*,
   834 F.3d 696 (6th Cir. 2016) ............................................... 8, 15, 16, 17

*Doyle v. Hogan*,
   1 F.4th 249 (4th Cir. 2021) ............................................................ 4, 6

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ............................................................... 1, 19, 20

*Egervary v. Young*,
   366 F.3d 238 (3d Cir. 2004) ............................................................ 5

*Ex parte Young*,
   209 U.S. 123 (1908) .................................................................... 3

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ................................................................... 18

*Femedeer v. Haun*,
   227 F.3d 1244 (10th Cir. 2000) ...................................................... 20

*Fernandez-Vargas v. Gonzales*,
   548 U.S. 30 (2006) .................................................................... 8

*Fouts v. Warren City Council*,
   97 F.4th 459 (6th Cir. 2024) ............................................................ 8

*Friends of George's, Inc. v. Mulroy,*
  108 F.4th 431 (6th Cir. 2024) ........................................................ 6

*Garza v. Lansing Sch. Dist.,*
  972 F.3d 853 (6th Cir. 2020) ...................................................... 3, 5

*Gebhardt v. Nielsen,*
  879 F.3d 980 (9th Cir. 2018) ........................................................ 10

*Hagood v. Southern,*
  117 U.S. 52 (1886) .................................................................. 23, 24

*Healthcare is Legal Duty, Inc. v. Deters,*
  92 F.3d 1412 (6th Cir. 1996) ......................................................... 3

*Hope v. Commissioner,*
  9 F.4th 513 (7th Cir. 2021) ................................................... *passim*

*Horn ex rel. Parks v. Madison Cnty. Fiscal Ct.,*
  22 F.3d 653 (6th Cir. 1994) .......................................................... 5

*Hudson v. United States,*
  522 U.S. 93 (1997) ................................................................... 13

*Jolivette v. Husted,*
  694 F.3d 760 (6th Cir. 2012) ......................................................... 1

*Kallstrom v. City of Columbus,*
  136 F.3d 1055 (6th Cir. 1998) ................................................... 1, 24

*Kansas v. Hendricks,*
  521 U.S. 346 (1997) .................................................................. 13

*Kirker v. Moore,*
  308 F. Supp. 615 (D. W. Va. 1970) .................................................. 24

*Knop v. Johnson,*
  977 F.2d 996 (6th Cir. 1992) ........................................................ 24

*Lakeside Surfaces, Inc. v. Cambria Co.,*
  16 F.4th 209 (6th Cir. 2021) ........................................................ 16

*Landgraf v. USI Film Prods.,*
  511 U.S. 244 (1994) ................................................................... 8

*Larson v. Domestic & Foreign Commerce Corp.,*
  337 U.S. 682 (1949) .............................................................. 23, 24

*Lindke v. Freed*,
    601 U.S. 187 (2024) .................................................................................... 2, 3

*Livingston v. State*,
    No. M2009-01900-COA-R3-CV, 2010 WL 3928634 (Tenn. Ct. App. 2010) ........................ 16

*Mackey v. Rising*,
    106 F.4th 552 (6th Cir. 2024) ................................................................................ 3

*Madej v. Maiden*,
    951 F.3d 364 (6th Cir. 2020) ............................................................................. 1, 2

*Martin v. Hadix*,
    527 U.S. 343 (1999) .................................................................................... 8, 10

*McGuire v. Marshall*,
    50 F.4th 986 (11th Cir. 2022) .......................................................................... *passim*

*Millard v. Camper*,
    971 F.3d 1174 (10th Cir. 2020) ......................................................................... 7, 15

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .......................................................................................... 19

*Mueller v. Raemisch*,
    740 F.3d 1128 (7th Cir. 2014) ........................................................................ 28, 31

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ............................................................................................. 5

*Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*,
    112 F.4th 196 (4th Cir. 2024) ......................................................................... *passim*

*Nichols v. United States*,
    578 U.S. 104 (2016) ......................................................................................... 21

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992) ............................................................................................. 11

*Ohio v. Madeline Marie Nursing Homes*,
    694 F.2d 449 (6th Cir. 1982) ................................................................................ 3

*Osborn v. Bank of U.S.*,
    22 U.S. (9 Wheat.) 738 (1824) ............................................................................ 23

*Ostrewich v. Tatum*,
    72 F.4th 94 (5th Cir. 2023) ............................................................................... 4, 5

*Patel v. Cuccinelli,*
    No. 3:17-cv-860, 2019 WL 3536332 (N.D. Cal. Aug. 2, 2019) ............................................. 10

*Patel v. Renaud,*
    851 F. App'x 669 (9th Cir. 2021) ......................................................................................... 10

*Pennoyer v. McConnaughy,*
    140 U.S. 1 (1891) ............................................................................................................. 23, 24

*People v. Davis,*
    208 P.3d 78 (Cal. 2009) ....................................................................................................... 21

*Powers v. Hamilton Cnty. Pub. Def. Comm'n,*
    501 F.3d 592 (6th Cir. 2007) ................................................................................................. 5

*Raceway Park, Inc. v. Ohio,*
    356 F.3d 677 (6th Cir. 2004) ................................................................................................. 9

*Rassier v. Sanner,*
    Civil No. 17-938, 2017 WL 5956909 (D. Minn. Nov. 30, 2017) ........................................ 21

*Regions Hosp. v. Shalala,*
    522 U.S. 448 (1998) ............................................................................................................... 8

*Reynolds v. Johnson,*
    628 F. App'x 497 (9th Cir. 2015) ......................................................................................... 9

*Richardson v. Flores,*
    28 F.4th 649 (5th Cir. 2022) .............................................................................................. 4, 5

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015) ............................................................................................... 6

*S & M Brands, Inc. v. Cooper,*
    527 F.3d 500 (6th Cir. 2008) ................................................................................................. 3

*Scott v. Schedler,*
    826 F.3d 207 (5th Cir. 2016) ............................................................................................... 25

*Shaw v. Patton,*
    823 F.3d 556 (10th Cir. 2016) ..................................................................................... *passim*

*Smith v. Doe,*
    538 U.S. 84 (2003) ....................................................................................................... *passim*

*State of Wis. v. Baker,*
    698 F.2d 1323 (7th Cir. 1983) .......................................................................................... 4, 23

vi

*State v. Timmendequas,*
    773 A.2d 18 (N.J. 2001)..............................................................................21

*Tex. All. for Retired Ams. v. Scott,*
    28 F.4th 669 (5th Cir. 2022) ......................................................................3, 4

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ...............................................................3, 4, 24

*Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC,*
    115 F.4th 480 (6th Cir. 2024) ........................................................................6

*U.S. Steel Corp. v. United Mine Workers of Am.,*
    519 F.2d 1236 (5th Cir. 1975) ......................................................................25

*Union Home Mortg. Corp. v. Cromer,*
    31 F.4th 356 (6th Cir. 2022) ...................................................................1, 25

*United States v. Ambert,*
    561 F.3d 1202 (11th Cir. 2009) .................................................................9, 10

*United States v. Brady,*
    26 F.3d 282 (2d Cir. 1994).............................................................................9

*United States v. Brown,*
    618 F. App'x 743 (4th Cir. 2015) ................................................................20

*United States v. Coccia,*
    598 F.3d 293 (6th Cir. 2010) .......................................................................28

*United States v. Elk Shoulder,*
    738 F.3d 948 (9th Cir. 2013) ..................................................................10, 12

*United States v. Felts,*
    674 F.3d 599 (6th Cir. 2012) ...................................................................9, 30

*United States v. Hemmings,*
    258 F.3d 587 (7th Cir. 2001) .........................................................................9

*United States v. Kebodeaux,*
    570 U.S. 387 (2013)......................................................................................10

*United States v. Martinez-Jimenez,*
    464 F.3d 1205 (10th Cir. 2006) ...................................................................20

*United States v. McDowell,*
    745 F.3d 115 (4th Cir. 2014) .......................................................................20

vii

*United States v. Mitchell*,
209 F.3d 319 (4th Cir. 2000) ......................................................... 8

*United States v. Parks*,
698 F.3d 1 (1st Cir. 2012) ..................................................... 15, 17

*United States v. Pfeifer*,
371 F.3d 430 (8th Cir. 2004) ......................................................... 8

*United States v. Romo*,
652 F. App'x 534 (9th Cir. 2016) .................................................. 20

*United States v. Ross*,
848 F.3d 1129 (D.C. Cir. 2017) .............................................. 11, 21

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ................................................................ 7, 8

*United States v. W.B.H.*,
664 F.3d 848 (11th Cir. 2011) .......................................... 12, 17, 18

*United States v. Wass*,
954 F.3d 184 (4th Cir. 2020) ......................................................... 9

*United States v. Young*,
585 F.3d 199 (5th Cir. 2009) .................................................. 15, 17

*Va. Office for Prot. & Advocacy v. Stewart*,
563 U.S. 247 (2011) ..................................................................... 24

*Vartelas v. Holder*,
566 U.S. 257 (2012) ...................................................... 7, 8, 9, 12

*Vasquez v. Foxx*,
895 F.3d 515 (7th Cir. 2018) ...................................... 12, 15, 18, 30

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ............................................................ 1, 6, 20

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ................................................................... 3, 4

*Witkowski v. CIS*,
17-80483-cv, 2018 WL 11349997 (S.D. Fla. Aug. 2, 2018) .................. 9

**Constitutional Provision**

U.S. Const. art. I, § 10, cl.1 ........................................................... 7

**Code Provisions**

28 U.S.C. § 534 ................................................................................................ 20

34 U.S.C. § 20901 .............................................................................................. 9

42 U.S.C. § 1983 .................................................................................... 2, 5, 23

Tenn. Code Ann. § 40-39-202 ................................................... 14, 15, 16, 21

Tenn. Code Ann. § 40-39-203 ..................................................... 6, 14, 15, 20

Tenn. Code Ann. § 40-39-204 ............................................................... 14, 20

Tenn. Code Ann. § 40-39-205 ...................................................................... 14

Tenn. Code Ann. § 40-39-206 ............................................................. 5, 14, 16

Tenn. Code Ann. § 40-39-207 ........................................................... 14, 15, 16

Tenn. Code Ann. § 40-39-208 ...................................................................... 20

Tenn. Code Ann. § 40-39-211 ...................................................................... 10

Tenn. Code Ann. § 40-39-214 ...................................................................... 14

**Federal Rule**

Fed. R. Civ. P. 65(d)(1) ........................................................................... 1, 25

**Session Laws**

Violent Crime Control and Law Enforcment Act,
  Pub. L. No. 103-322, § 170101, 108 Stat. 1796, 2038–42 (1994) ........................................... 21

Pam Lynchner Act
  Pub. L. No. 104-236, 110 Stat. 3093 (1996) ............................................................... 21

Adam Walsh Act,
  Pub. L. No. 109–248, § 102, 120 Stat. 587, 590 (2006) .................................................. 10, 21

1994 Tenn. Pub. Acts ch. 976 .......................................................... 27, 28, 29

1997 Tenn. Pub. Acts ch. 455 ...................................................................... 30

2000 Tenn. Pub. Acts ch. 997 ...................................................................... 27

2004 Tenn. Pub. Acts ch. 921 .......................................................... 27, 28, 29

ix

2005 Tenn. Pub. Acts ch. 316 ................................................................................................. 29

2006 Tenn. Pub. Acts ch. 890 ................................................................................................. 29

2007 Tenn. Pub. Acts ch. 531 ................................................................................................. 29

2008 Tenn. Pub. Acts ch. 979 ................................................................................................. 27

2008 Tenn. Pub. Acts ch. 1164 .............................................................................. 11, 27, 28, 29

2010 Tenn. Pub. Acts ch. 1138 ............................................................................................... 27

2011 Tenn. Pub. Acts ch. 222 ................................................................................................. 28

2011 Tenn. Pub. Acts ch. 266 ................................................................................................. 29

**Other Authorities**

*Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?*,
   54 J.L. & Econ. 161 (2011) ................................................................................................ 11

H.R. Rep. No. 104-555 ............................................................................................................ 11

## INTRODUCTION[*]

The Sixth Circuit reversed this Court's previous judgment. *See Doe v. Lee*, 102 F4th 330, 342 (6th Cir. 2024). It remanded with instructions to "modify the injunction against Director Rausch." *Id.* (emphasis omitted). It held that "[t]he only injunction potentially warranted against Director Rausch would be a limited one prohibiting him from exercising his . . . record-keeping powers . . . in a way that violates [the Does'] rights." *Id.* at 341–42. And although the Sixth Circuit "c[ould not] say with finality that Director Rausch does not enforce any unconstitutional provisions of . . . Tennessee [law]," its opinion leaves this Court free to "make that determination on remand." *Id.* at 341. This Court should do so and deny injunctive relief.

## ARGUMENT

The Does have not carried their burden to justify any form of permanent injunction.

A plaintiff "cannot obtain a permanent injunction" without first "show[ing] 'actual success' on [a] claim[]." *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) (quoting *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012)). After a plaintiff has proved his legal rights were violated, he "must [then] demonstrate" he is "suffer[ing] an irreparable injury" and broader considerations of "hardship[]" and "public interest" support equitable relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982)). After meeting those prerequisites, the Court may grant an injunction *only* to the extent equity demands. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 (6th Cir. 1998). If the Court does so, it must "state the reasons" for its order, "state [the injunction's] terms specifically," and "describe in reasonable detail" what "act[ions]" the defendant may not take. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (quoting Fed. R. Civ. P. 65(d)(1)).

---

[*] Pincites to docket filings use the PageID file-stamp pagination.

Three obstacles stand in the way of any such order issuing here. *First*, The Does' claims lack legal merit. *Second*, they have failed to show that the equities favor relief. *Third*, this Court cannot force Director Rausch to take any affirmative action — it can only prohibit him from exercising whatever unconstitutional powers may have been conferred on his office.

## I. The Does have not proved a right to relief on their *Ex Post Facto* Clause claims.

To receive permanent injunctive relief, the Does must prove the merit of their *Ex Post Facto* Clause theory. *Madej*, 951 F.3d at 369. They have failed, the Remand Order notwithstanding. *See* Order, D.155 at 2850. This Court has limited jurisdictional and statutory purview to adjudicate the Does' constitutional rights. But the Does have not proved Director Rausch exercises any enforcement authority that intentionally or effectively imposes retroactive punishment.

### A. The Court only has power to review Director Rausch's use of state authority.

This case is on remand to determine whether any "portions of Tennessee's [sex offender] statutes" can be held unconstitutional and prohibited from enforcement through Director Rausch's statutory "authorit[ies]." *Doe*, 102 F.4th at 336. In other words, the Court must determine whether "Director Rausch . . . enforce[s] any unconstitutional provisions" of Tennessee law. *Id.* at 341. It cannot treat Director Rausch as a symbolic proxy for more expansive review.

#### 1. The only provisions the Does can put at issue are those granting Director Rausch power to enforce Tennessee law against the Does.

The Sixth Circuit has ordered a "provision-by-provision analysis of Tennessee's [sex offender] regulatory regime." *Id.* at 340. But this court can only adjudicate the "provisions" Director Rausch "enforce[s]." *Id.* at 341. It must limit its review accordingly.

The reasons for this start with the language of the Civil Rights Act. That statute allows the Does to sue Director Rausch for "depriv[ing]" them of "federal . . . right[s]" by acting "under color of" Tennessee law. *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (emphasis omitted) (quoting 42

U.S.C. § 1983). To prove their case, the Does must first identify an "actual" legal authority Director Rausch "possesse[s]" or "purport[s] to exercise." *Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024) (quoting *Lindke*, 601 U.S. at 191). The Does must then prove that Director Rausch's exercise of such authority is "both a cause in fact *and* a proximate cause of [their] injur[ies]." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (emphasis added) (citing *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 868 (6th Cir. 2020)).

But additional burdens flow from the Does' choice to preemptively sue for injunctive relief. As an agent of the State of Tennessee, Director Rausch enjoys immunity from Civil Rights Act liability. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). To evade that immunity, the Does must use the "narrow exception" provided by *Ex parte Young*, 209 U.S. 123 (1908). *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). And that exception requires a plaintiff to prove a defendant state "officer['s] . . . [*own*] statutory authority . . . is unconstitutional." *Child.'s Healthcare is Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (quoting *Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 459 n.9 (6th Cir. 1982)). Such proof requires a "provision-by-provision" linking of the plaintiff's injury, to the officer's authority, to some constitutional defect. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)).

This case thus concerns only Director Rausch's own statutory power, specifically whether Director Rausch "enforce[s] any unconstitutional provisions" of Tennessee law. *Doe*, 102 F.4th at 341. The Court must look through the sex offender laws "provision[ ]by[ ]provision" and determine whether Director Rausch "enforce[s] any . . . provisions" that are "unconstitutional." *Id.* at 340–41. It cannot use Director Rausch's limited role as a springboard to broader review.

3

## 2.    The Remand Order's causation theory lacks foundation.

The Remand Order previews the undertaking of a broader analysis, but such an analysis would exceed this Court's jurisdiction.  As the Sixth Circuit made clear, "the entire regulatory regime" is not properly at issue.  *Id.* at 338.  And to put it at issue on the theory that Director Rausch causes others to commit "direct" *Ex Post Facto* Clause violations is to deny both the governing law and this case's limited factual record.  Order, R.155 at 2849.

***The Law.***  To begin, the Sixth Circuit has explicitly held that this Court's jurisdiction allows it to answer one discrete question: whether "Director Rausch . . . enforce[s] any unconstitutional provisions" of Tennessee's sex offender laws.  *Doe*, 102 F.4th at 341.  The Court can stop Director Rausch from "exercis[ing]" statutory authority Tennessee "was powerless to convey." *State of Wis. v. Baker*, 698 F.2d 1323, 1332 (7th Cir. 1983).  But if Director Rausch cannot himself "direct[ly] perpetrat[e]" any constitutional torts, no injunction against him falls within *Ex parte Young*'s parameters.  Order, R.155 at 2849; *see Jackson*, 595 U.S. at 39.  Those parameters provide the main reason why the Court's analysis must go "provision[ ]by[ ]provision." *Texas Alliance*, 28 F.4th at 672 (quoting *Tex. Democratic Party*, 978 F.3d at 179).  That is, "the officer sued must be able to enforce, if he so chooses, the specific [provisions of] law the plaintiff [has] challenge[d]."  *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021).  There mere "transmi[ssion]" of "information" to other state officers does not put those officers' enforcement authorities at issue.  Order, R.155 at 2849; *see Doe*, 102 F.4th at 341.

Other courts have explicitly held this.  They have confronted *Ex parte Young* claims premised on a state defendant giving "advice, guidance, or interpretive assistance." *Ostrewich v. Tatum*, 72 F.4th 94, 100 (5th Cir. 2023) (quoting *Richardson v. Flores*, 28 F.4th 649, 655 (5th Cir. 2022)).  And they have held *Ex parte Young* plaintiffs "may not rely . . . on" such "'assistance'" to sustain a suit for injunctive relief.  *Id.* (quoting *Richardson*, 28 F.4th at 655).  Providing "'advice'" or

"'guidance' . . . to local officials does not constitute enforcement" of laws those officials execute. *Id.* (quoting *Richardson*, 28 F.4th at 655). If the Does wanted to influence local officials, they should not have neglected to name such officials as "parties." *Doe*, 102 F.4th at 341.

This becomes even clearer when one accounts for broader principles of legal causation. To be sure, the Civil Rights Act extends liability to all conduct that "'causes'" a "'deprivation of ' . . . federal rights." Order, R.155 at 2849 (emphasis omitted) (quoting 42 U.S.C. § 1983). But again, the federal courts have read that language to require showings of "both ['but-for'] *and* . . . proximate cause." *Crawford*, 15 F.4th at 762 (emphasis added) (citing *Garza*, 972 F.3d at 868); *see Horn ex rel. Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 659 (6th Cir. 1994). And standing jurisprudence provides similar causation-based hurdles. *See Murthy v. Missouri*, 603 U.S. 43, 57–59 (2024). So when a plaintiff's injury depends on a separate state officer's "intervening" exercise of enforcement authority, that action serves "[a]s a superseding cause [that] prevents . . . liabil[ity]" from running up the causal chain. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 610 (6th Cir. 2007) (quoting *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)); *see also Murthy*, 603 U.S. at 57 (addressing the same principle through the rubric of standing).

This Court's more relaxed view of causation also leads to one final roadblock: The Sixth Circuit foreclosed relief to the Does based on Director Rauch's power to "transmit[] . . . information." Order, R.155 at 2849; *see Doe*, 102 F.4th at 341 (citing Tenn. Code Ann. § 40-39-206(b)); *see also id.* at 338–41 (discussing *Smith v. Doe*, 538 U.S. 84 (2003); *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), and *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999)). It thus stands to reason that such "transmi[ssion]" cannot justify injunctive relief. Order, R.155 at 2849.

***The Record.*** Improperly reducing causation to "but for" cause also does not work in this case because the Does have never proved Director Rausch to be the "but for" cause of any other

officer's conduct.  Any party seeking summary judgment must prove entitlement to summary judgment.  *See Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 488 (6th Cir. 2024).  And every party seeking exemption from state law must prove entitlement to that extraordinary relief as well.  *Weinberger*, 456 U.S. at 311–13.  Yet by supplying a causation theory that *the Does* have never put forward, the Remand Order grants summary judgment despite an "absence of [causation] evidence."  *Next Century*, 115 F.4th at 489.

The Remand Order's analysis illustrates the point.  It cites nothing in the record to link Director Rausch's publication activity to any other officer's conduct.  *See* Order, D.155 at 2849. And the Does would need more than the generalized link the Order presumes.  To "challenge[]" a "specific law" as impermissible retroactive punishment, the Does would need proof that Director Rausch's conduct causes the enforcement of *that* specific law against them.  *Doyle*, 1 F.4th at 255; *see Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015).  Although the Order identifies some restrictions that may (or may not) violate the *Ex Post Facto* Clause, it provides nothing in the record to establish any Doe's intention to violate any of those restrictions — much less "a 'certainly impending' threat of prosecution" that would not occur absent Director Rausch's involvement.  *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (emphasis omitted) (quoting *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017)).

Moreover, this record provides strong reasons to doubt that if such an enforcement action occurred, Director Rausch would have anything to do with it.  The Does themselves have faulted Director Rausch for not "provid[ing] a map" to help other state officers enforce unspecified rules about access to children.  Defs.' Resp. Fact Stmt., R.128 at 2657.  And the Does have admitted that they all registered under the statute, thus making themselves known to local police and prosecutors.  *See* Pls.' Resp. Fact Stmt., R.125 at 2601–07; *see also* Tenn. Code Ann. § 40-39-203

(requiring disclosure of pertinent facts to local law enforcement); *id.* § 40-39-204(d) (requiring

local law enforcement to "retain a duplicate copy" of all completed "TBI registration form[s]").

When this suit was initiated, the Does also had to carry documents identifying themselves as sex

offenders. *See id.* § 40-39-213(a). So painting Director Rausch as central to any enforcement

action neglects how Tennessee law actually operates.

The Court can cure these issues by following "the principle of party presentation." *United*

*States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). But regardless, the law and the record both

limit the scope of permissible review.

### B. Tennessee's regulations do not violate the *Ex Post Facto* Clause.

Regardless of the scope of review, no injunction can issue. The Does rest their claims on

a theory that Tennessee's regulation of them violates the *Ex Post Facto* Clause. *See* Order, D.155

at 2847. But that part of the Constitution only prohibits States from "pass[ing] . . . [l]aw[s]" that

are both retroactive and punitive. U.S. Const. art. I, § 10, cl.1; *see Doe*, 102 F.4th at 336. Ten-

nessee's sex offender laws are not retroactive; they "regulate[] 'dangers that arise postenactment.'"

*Bremer v. Johnson*, 834 F.3d 925, 932 (8th Cir. 2016) (quoting *Vartelas v. Holder*, 566 U.S. 257,

271 n.7 (2012)). And Tennessee' sex offender laws are not punitive; they bear the hallmarks of

regulation, not punishment. *See Smith*, 538 U.S. at 97–106; *Bredesen*, 507 F.3d at 1003–08; *Cut-*

*shall*, 193 F.3d at 474–77; *see also Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*, 112

F.4th 196, 208 (4th Cir. 2024) (addressing premises restrictions); *McGuire v. Marshall*, 50 F.4th

986, 997–98, 1008–16 (11th Cir. 2022) (addressing residency and employment restrictions); *Hope*

*v. Commissioner*, 9 F.4th 513, 523, 530–34 (7th Cir. 2021) (same); *Millard v. Camper*, 971 F.3d

1174, 1177–1184 (10th Cir. 2020) (same) (citing *Shaw v. Patton*, 823 F.3d 556 (10th Cir. 2016)).

Due to those two independent obstacles, the Does cannot prove the merit of their claims.

### 1. Tennessee's sex offender laws are not retroactive.

None of Tennessee's sex offender laws operate retroactively, and *Does #1–5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), says nothing to the contrary. Instead, the *Snyder* Court brushed by retroactivity because the Michigan defendants failed to "[]dispute[]" that issue. *Snyder*, 834 F.3d at 698; *see Sineneng-Smith*, 590 U.S. at 375. But for this Court to grant an injunction, it must deem Director Raush to be applying a retroactive law. *see supra* at 7, and "a statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 n.24 (1994) (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)); *see Regions Hosp. v. Shalala*, 522 U.S. 448, 456 (1998). Under a proper retroactivity analysis, all of Tennessee's sex-offender rules prospectively target future risks and conduct.

The relevant question is whether the law "impairs vested rights" or otherwise attempts to alter the rules for "transactions . . . already past." *Bakran v. Secretary*, 894 F.3d 557, 567 (3d Cir. 2018) (emphasis added) (quoting *Atkinson v. Att'y Gen.*, 479 F.3d 222, 227 (3d Cir. 2007); *see also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 n.10 (2006) (explaining the concept of "vested rights"). It does not matter whether the statute "upsets expectations." *Landgraf*, 511 U.S. at 269. The question is whether the legislature sought to "address" *completed* conduct or *future* conduct. *Vartelas*, 566 U.S. at 271 n.7; *see Fouts v. Warren City Council*, 97 F.4th 459, 468 (6th Cir. 2024); *see also Martin v. Hadix*, 527 U.S. 343, 363 (1999) (Scalia, J., concurring in part and concurring in the judgment) (looking to legislative intent). Telling the difference does not always come easy; it "demands a commonsense, functional judgment." *Martin*, 527 U.S. at 357 (majority opinion). But courts applying this framework have often deemed laws limiting the rights of con-victed felons to be prospective, not retroactive. *Bakran*, 894 F.3d at 567; *see also id.* (collecting statutes and cases); *see United States v. Pfeifer*, 371 F.3d 430, 436 (8th Cir. 2004) (citing *United*

*States v. Mitchell*, 209 F.3d 319, 322–23 (4th Cir. 2000); *United States v. Brady*, 26 F.3d 282, 290–91 (2d Cir. 1994)); *see also United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001) (same).

In the case of Tennessee's sex offender laws, "[t]he past . . . conviction is only the prerequisite for the *prospective*" imposition of regulatory burdens. *De Osorio v. INS*, 10 F.3d 1034, 1042 (4th Cir. 1993) (emphasis added); *see also Campos v. INS*, 16 F.3d 118, 122 (6th Cir. 1994) (citing and agreeing with *De Osorio*). That is, these laws "do not *create* any liability" for past acts; they just "look[] at certain antecedent facts" to "regulate future" risks. *Bell Atl. Tel. Cos. v. FCC*, 79 F.3d 1195, 1207 (D.C. Cir. 1996). The Does cannot credibly "argu[e] . . . that they somehow relied on" the future obscurity of their criminal records "when choosing to engage in illegal [sexual] activity." *De Osorio*, 10 F.3d at 1042. And they "could not have reasonably assumed that" the government would keep their crimes, and present whereabouts, a secret. *Bell Atl. Tel Cos. v. FCC*, 79 F.3d at 1205. Neither could they assume the law would never change to restrict their future behavior. Civil regulations, by definition, impose new restrictions on parties being regulated. *See Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 688 (6th Cir. 2004).

Numerous federal courts have applied this reasoning to reject *Ex Post Facto* Clause claims, including claims challenging sex offender regulations like those enacted in Tennessee. *See, e.g.*, *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012); *United States v. Ambert*, 561 F.3d 1202, 1207–08 (11th Cir. 2009); *Witkowski v. CIS*, No. 17-80483-cv, 2018 WL 11349997, at *7 (S.D. Fla. Aug. 2, 2018); *see also United States v. Wass*, 954 F.3d 184, 190–92 & n.7 (4th Cir. 2020) (collecting cases). Some of these courts have explicitly explained that the federal Adam Walsh Act — which shares and dictates many features of Tennessee law, *see* 34 U.S.C. § 20901 *et seq.* — "address[es] dangers that arise postenactment,' and therefore 'do[es] not operate retroactively.'" *Reynolds v. Johnson*, 628 F. App'x 497, 498 (9th Cir. 2015) (quoting *Vartelas*, 566 U.S.

at 271 n.7); *see Patel v. Renaud*, 851 F. App'x 669, 671–72 (9th Cir. 2021) (citing *Gebhardt v. Nielsen*, 879 F.3d 980, 986 (9th Cir. 2018)); *Patel v. Cuccinelli*, No. 3:17-cv-860, 2019 WL 3536332, at *3 (N.D. Cal. Aug. 2, 2019) (citing *United States v. Elk Shoulder*, 738 F.3d 948, 957–58 (9th Cir. 2013)). "Congress . . . passed the Adam Walsh Act '[t]o protect the public from sex offenders,'" and this legislation "specifically" addresses "the dangers that convicted sex offenders may pose to" the people around them. *Bremer*, 834 F.3d at 932 (quoting Pub. L. No. 109–248, § 102, 120 Stat. 587, 590 (2006)); *see Bakran*, 894 F.3d at 567. "[B]ecause the Act is aimed at providing prospective protection, it is not impermissibly retroactive." *Bakran*, 894 F.3d at 559–60. Indeed, "the entire scheme focuses on prevention," defeating any claim of retroactivity. *Id.* at 567 (quoting *Gebhardt*, 879 F.3d at 986).

"[A] commonsense, functional judgment" should yield the same result here. *Martin*, 527 U.S. at 357. Just like their federal counterparts, Tennessee's sex offender regulations aim "to address[] . . . postenactment danger[s]." *Elk Shoulder*, 738 F.3d at 958. "[T]he [registry and publication] provisions address[] . . . the danger that the public would not be aware of potentially dangerous sex offenders living, working, or attending school" nearby. *Id.*; *see also Ambert*, 561 F.3d at 1214 (recounting pertinent congressional debates). And the restrictions on where sex offender may live, work, or "sit idly" address the danger of sex offender access to children, the group most susceptible to victimization by those who lack control over their sexual impulses. Tenn. Code Ann. § 40-39-211(d)(1)(B); *see also id.* § 211 (containing most of the child-access restrictions). The General Assembly has stated these aims in legislative "find[ings]" and "declar[ations]" that deserve substantial respect. *Id.* § 40-39-201; *see United States v. Kebodeaux*, 570 U.S. 387, 395 (2013); *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (citing

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)).  And its findings are not baseless, despite what some district courts have intimated.

On the contrary, the current regulatory regime follows years of debate and fine-tuning, kicked off by public alarm and "demand that government take stronger action" to prevent sex-offender recidivism.  H.R. Rep. No. 104-555, at 2 (1996); *see United States v. Ross*, 848 F.3d 1129, 1139 (D.C. Cir. 2017) (Millett, J., concurring in part, dissenting in part, and dissenting from the judgment).  The public felt this way because it knew from experience what the hard data also confirmed: child sexual abuse was far too common, and its perpetrators made poor candidates for rehabilitation.  *See, e.g.*, 139 Cong. Rec. 31,251–52 (1993) (statements of Reps. Ramstad and Hobson); *id.* at 31,250 (statement of Rep. Sensenbrenner); 142 Cong. Rec. 8599 (1996) (statement of Rep. Jackson-Lee); *id.* at 10,314 (statement of Rep. Jackson-Lee); *id.* at 10,314–16 (statements of Reps. Lofgren, Watt, Upton, Bereuter, and Molinari).  One cited study showed that the average offender against children would molest over 100 different victims in his lifetime.  139 Cong. Rec. 10,998 (1993) (statement of Rep. Ramstad).  Another found that "[s]eventy-four percent of all convicted child abusers are repeat offenders."  139 Cong. Rec. 31,253 (1993) (statement of Rep. Hoyer).  Lawmakers expressed similar concerns with respect to "rapists, women-beaters, [and] convicted violent stalkers."  140 Cong. Rec. 22,520 (1994) (statement of Rep. Dunn).  And input from the National Institute of Mental Health and the National Center for Missing and Exploited Children (NCMEC) echoed those same concerns.  *See* 139 Cong. Rec. 31,253 (1993) (statement of Rep. Hobson); 142 Cong. Rec. 10,312 (1996) (Letter from President of NCMEC).

In fact, at the time many of the child-access restrictions passed into law, the article questioning the efficacy of these rules had not been published.  *Compare* 2008 Tenn. Pub. Acts ch. 1164, § 11 (Addendum, D.159-4 at 3255–57), *with* J.J. Prescott & Jonah E. Rockoff, *Do Sex*

*Offender Registration and Notification Laws Affect Criminal Behavior?*, 54 J.L. & Econ. 161 (2011). Instead, available data indicated that in the three years after States started substantially regulating sex offenders, they were slightly less likely than "non-sex offenders" to be rearrested, but four times "*more* likely to be rearrested for a sex crime." Bureau of Justice Statistics, Recidivism of Sex Offenders Released from Prison in 1994 at 1, 14 (2003) (emphasis added). Other resources likewise indicated that "most reoffenses [would] not occur within the first several years after release," and that "child abusers ha[d] been known to reoffend as late as [*twenty*] years following release." Nat'l Inst. of Just., Child Molestation: Research Issues at vi, 14 (1997) (emphasis added). In addition, recidivism rates were failing to reflect the full risk that sex offenders pose to the public, due to the "serious underreporting of sex crimes, especially sex crimes against children." *Belleau v. Wall*, 811 F.3d 929, 933 (7th Cir. 2016); *see also id.* at 933–34 (citing research).

Moreover, an observation of "similar recidivism rates across different categories of crime" fails to indicate a retroactive focus in the same way that it fails to indicate the "aim of . . . protecting children" is merely a "sham." *Vasquez v. Foxx*, 895 F.3d 515, 522 (7th Cir. 2018) *abrogated on other grounds by Koch v. Village of Hartland*, 43 F.4th 747, 756 & n.6 (7th Cir. 2022); *see United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011). Whether Tennessee's laws accomplish that aim is a matter of legislative — not judicial — concern. And because these laws use antecedent facts to "address" future risks, not past conduct, the Court cannot label them as retroactive measures. *Vartelas*, 566 U.S. at 271 n.7; *see Cox*, 260 U.S. at 435; *see Bakran*, 894 F.3d at 567; *Bremer*, 834 F.3d at 932; *Elk Shoulder*, 738 F.3d at 957–58; *Campos*, 16 F.3d at 122.

### 2. Tennessee's sex offender laws are not punitive.

Tennessee's sex offender laws also bear the hallmarks of civil regulation, rather than punishment. For this additional reason, none of them violate the *Ex Post Facto* Clause.

Because the Does have never argued that these laws are intentionally punitive, the question has always been whether they are "so punitive" in "effect as to negate" the State's regulatory "intention[s]." *Smith*, 538 U.S. at 92 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). On that question, "'[o]nly the clearest proof' will transform what the legislature has denominated a civil regulatory measure into a criminal penalty." *Doe v. Miller*, 405 F.3d 700, 718 (8th Cir. 2005) (quoting *Smith*, 538 U.S. at 92). And that places a "heavy burden" on the Does. *McGuire*, 50 F.4th at 1005. Specifically, they must show particular provisions to be inherently punitive or else establish the "nonpunitive purpose[s]" of such provisions are no more than "sham or . . . pretext." *Hope*, 9 F.4th at 534 (quoting *Smith*, 538 U.S. at 103)).

Determining whether that showing has been made requires an open-ended comparison between the provisions at issue and the core features of regulation and punishment. As useful guideposts, the Court should consider the nature of punishment as defined by "histor[ical] . . . traditions" and "aims." *Bredesen*, 507 F.3d at 1004 (quoting *Smith*, 538 U.S. at 97); *see Hudson v. United States*, 522 U.S. 93, 99 (1997); *see also Doe v. Settle*, 24 F.4th 932, 947 (4th Cir. 2022) (identifying the "*Mendoza-Martinez* factors"). It should then balance that assessment against the law's "connection to a" regulatory objective, considering the "rational[ity]" and potential "excessive[ness]" of the means employed to meet "nonpunitive" ends. *Smith*, 538 U.S. at 97.

In this case, the Court can simplify its analysis by relying on binding Sixth Circuit precedent, including the decision remanding this case for further proceedings. According to that decision, the Does have never once identified any specific provisions or "enforcement authorit[ies]" that Director Rausch can or has ever wielded in violation of the *Ex Post Facto* Clause. *Doe*, 102 F.4th at 336. Instead, this case has only ever concerned decidedly lawful TBI authorities, including the power to "design[] and issu[e]" registration forms; "creat[e] and maintain[] the registry

13

database"; "disseminat[e] . . . information to prosecutors and law enforcement"; "facilitat[e] other agencies' entry of new data into the registry"; "and manag[e] the repository of original registry forms." *Id.* at 341. Such authorities fall "squarely within [Tennessee's] legitimate regulatory scheme." *Id.*; *see also id.* at 339 (citing and discussing *Smith*, 538 U.S. 84; *Bredesen*, 507 F.3d 998; and *Cutshall*, 193 F.3d 466). No injunction can prevent their exercise.

In spite of this, the Sixth Circuit could not definitively "say" that everything "Director Rausch does" is regulatory rather than punitive. *Id.* at 341. But this Court is free to "make that determination" now, *id.*, and that is what it should do.

**Reporting and Publication.** The Sixth Circuit specifically cited and excluded Director Rausch's core authorities from judicial nullification. *See id.* (citing Tenn. Code Ann. §§ 40-39-204(a), 204(d), 205(a), 206(a), 206(b)). It also held that Tennessee's "registration" and "reporting" rules "are not of a type" American courts "have traditionally considered as a punishment." *Id.* at 339 (quoting *Bredesen*, 507 F.3d at 1005). "So, a registry kept by the state and disclosed publicly" by Director Rausch "is constitutionally sound" and not subject to court-ordered disruption. *Id.* (citing *Smith*, 538 U.S. at 90–91). In reaching that holding, the Sixth Circuit protected *all* of Director Rausch's reporting- and publication-related authorities from override by this Court. *See* Tenn. Code Ann. §§ 40-39-203(i), 203(m), 206(d), 214(a).

**Lifetime Compliance.** Although the Does may attempt to raise the specter of punishment in their lifetime compliance obligation, *see id.* § 207(g)(2), that argument would fail for two reasons: (1) Director Rausch does not impose that obligation, and (2) it is not punishment.

To be clear, no plaintiff here has directly challenged his ineligibility for "termination of registration requirements," *id.* § 207(a)(1), and the Does have identified no evidence that any of them ever sought such relief. But regardless, the Does must comply with Tennessee's sex offender

laws for life, and that is *not* because Director Rausch says so but because Director Rausch *lacks* any power to "relieve[]" them. *Id.* § 207(d). Given that, it would be passing strange for the Does to raise *Ex parte Young* claims based on this provision. Were that allowed, the Does could sue any state officer (or anyone else) for lacking such governmental authority. But the Civil Rights Act and *Ex parte Young* doctrine do not work like that: they only allow suits to challenge the exercise of power a government official actually or apparently has. *See supra* Part I.A.

Putting that issue aside, this Court also cannot deem lifetime compliance to be punishment in-and-of itself, because binding and persuasive precedent would not allow that determination. In *Smith v. Doe*, the Supreme Court upheld a registry regime that required "life[time]" reporting and broad dissemination of reported information to the public. 538 U.S. at 98. And in *Doe v. Bredesen*, the Sixth Circuit upheld Tennessee's own lifetime reporting and publication rules. *See* 507 F.3d at 1000 (citing Tenn. Code Ann. § 207(g)(1)(B) (2007)). Those direct holdings necessarily take precedence over whatever *Snyder* says about "life[time]" obligations. 834 F.3d at 703; *see Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). And for good measure, a host of other circuit precedent confirms that imposing obligations for life does not render sex offender regulations punitive. *See Stein*, 112 F.4th at 201; *McGuire*, 50 F.4th at 1015–16, *Settle*, 24 F.4th at 935, 947–53; *Millard*, 971 F.3d at 1181–1184 & n.6; *Vasquez*, 895 F.3d at 518, 522; *United States v. Parks*, 698 F.3d 1, 5–6 (1st Cir. 2012); *Miller*, 405 F.3d at 704–08, 718–23; *United States v. Young*, 585 F.3d 199, 205 (5th Cir. 2009) (per curiam).

***Classification.*** Recognizing this, the Does may try to argue that Director Rausch imposes punishment by "classif[ying]" them based on an "estimation of present dangerousness." *Snyder*, 834 F.3d at 702. But to the extent any classification flows from Tennessee law's various "offender" categories, the *law itself* makes those classifications based solely on historical facts. *See* Tenn. Code Ann. §§ 40-39-202(9)–(10), (19)–(20), (30)–(31), 203(a)(1), 203(i)(6), 203(i)(15).

15

Director Rausch's obligation to "publi[sh]" some of those facts cannot be deemed a punitive classification. *Id.* § 40-39-206(d); *see Smith*, 538 U.S. 97–98. Nor does his application of the law's offender categories work any injury to the Does. No one disputes that the Does all meet "*the* [*law's*]" definition of "'violent sexual offender.'" Defs.' Resp. Fact Stmt., D.128 at 2655 (emphasis added). And if any of them wanted to contest their inclusion in that category, they could do so in Tennessee's courts. *See* Tenn. Code Ann. § 40-39-207(g)(1). In fact, such proceedings illustrate why Director Rausch *cannot* "classif[y]" the Does. *Snyder*, 834 F.3d at 702. The law classifies the Does. *See Livingston v. State*, No. M2009-01900-COA-R3-CV, 2010 WL 3928634, at *4 (Tenn. Ct. App. 2010). Director Rausch just enforces the law's "[d]efin[ed]" terms. Tenn. Code Ann. § 40-39-202.

But even putting that distinction to the side, no "classification" scheme here could be deemed punitive. Indeed, *every* sex offender regulation must "classify" persons to specify its metes and bounds. For instance, the Alaska statute before the Supreme Court in *Smith v. Doe* applied to the plaintiffs solely because they "were convicted of sexual abuse of a minor." 538 U.S. at 91. And that statute further "differentiate[d] between individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense." *Id.* at 102. But the Supreme Court held that using such "broad categories" to determine the "length of [an offender's] reporting requirement" was "reasonably related to the danger of recidivism" and "consistent with [Alaska's] regulatory objective." *Id.* "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103.

Again, a stack of circuit precedent has upheld similar regimes on this logic, including the Sixth Circuit, which addressed Tennessee's "reclassif[ication] of [the plaintiff] as a violent . . . offender" in *Bredesen*. 507 F.3d at 1000. To the extent *Snyder* is "in tension" with *Bredesen* or *Smith*, this Court must follow "the earlier" circuit and Supreme Court decisions. *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 218 (6th Cir. 2021). And those decisions also align with substantial persuasive

16

authority that *Snyder* simply ignores. *Compare Snyder*, 834 F.3d at 705, *with Shaw*, 823 F.3d at 572, 576–77; *Doe v. Cuomo*, 755 F.3d 105, 108–12 (2d Cir. 2014); *Parks*, 698 F.3d at 5–6; *ACLU v. Masto*, 670 F.3d 1046, 1050–51, 1055–58 (9th Cir. 2012); *W.B.H.*, 664 F.3d at 852, 860; *Young*, 585 F.3d at 205; *Miller*, 405 F.3d at 704–08, 718–23.

     ***Child Access.*** The analysis above should lead these proceedings back to the fundamental holding of this case's prior appeal: The only "*potentially* unconstitutional portions" of Tennessee's regime are those "prohibiting [offenders] from living, working, and traveling within certain areas." *Doe*, 102 F.4th at 341 (emphasis added). "Director Rasuch cannot be enjoined from enforcing [those] provisions" — because "he does not enforce" them. *Id.* at 342. Those provisions "are enforced by . . . [police] officers and prosecutors [who] are not parties" in this case. *Id.* at 341.

     If the Court nonetheless considers reaching the child-access rules through an injunction against Director Rausch, it should still refrain from issuing such an injunction because those rules do not punish the Does either. The Sixth Circuit never applied *Snyder* to invalidate any Tennessee law in the prior appeal; It only noted "potential[]" constitutional problems that might arise were *Snyder*'s narrow holding brought to bear. *Id.* But parties in *Snyder* invited errors that cannot bind Director Rausch in this case. Once this Court accounts for those errors, it should hold Tennessee's child access rules pass *Ex Post Facto* Clause muster.

     Apart from the failure to address retroactivity — which explicitly limits the *Snyder* opinion's reach, *see supra* at 8 — the *Snyder* court also conducted a punishment analysis tainted by the defendants' concessions. In particular, the *Snyder* court undertook a judicial reassessment of Michigan's motives based on post-enactment evidence compiled in litigation. *See* 834 F.3d at 704–05. And although *Snyder* gives no indication either party made an issue of it, *see id.*, that type of analysis cannot help establish a law's punitive character.

Several other courts have explained why. To begin, post-enactment evidence of a metric like "recidivism rates" could easily indicate *accomplishment* of a rational regulatory objective — in this case, the objective of reducing sex offender recidivism. *Clark v. Gwyn*, No. M2018-00655-COA-R3-CV, 2019 WL 1568666, at *8 (Tenn. Ct. App. Apr. 11, 2019); *see supra* Part I.B.1. But more importantly, it does not matter whether a regulatory provision has accomplished its aim. The relevant question is whether the aim was rational upon enactment or instead "mere[ly]" offered as "pretext." *Hope*, 9 F.4th at 534 (quoting *Smith*, 538 U.S. at 103). And proof of pretext does not follow from a handful of limited studies.

On the contrary, state legislatures are "free to disagree with" even contemporaneous evidence indicating a measure's efficacy. *Stein*, 112 F.4th at 205 (quoting *Settle*, 24 F.4th at 948). And they "are free to legislate 'based on rational speculation unsupported by evidence or empirical data.'" *Id.* at 206 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). So "a recalibrated assessment of recidivism risk" during litigation cannot "refute [a law's] legitimate" goal of promoting "public safety." *Masto*, 670 F.3d at 1057; *see W.B.H.*, 664 F.3d at 860. Rather, courts should refrain from "parsing the latest academic studies on sex-offender recidivism" in an effort to "second-guess" a "policy judgment" made years earlier. *Vasquez*, 895 F.3d at 525. Courts must determine only whether evidence at the time of enactment permitted a "conclu[sion] that sex offenders present an unusually high risk of recidivism" and restrictions on their access to potential victims could "reduce that risk." *Bredesen*, 507 F.3d at 1006; *see Stein*, 112 F.4th at 205–06. To the extent *Snyder* says otherwise, it has always misstated the law.

This explains why courts forgoing *Snyder*'s improper reliance on post-enactment evidence have held that prohibiting sex offenders from living near "school[s], playground[s], park[s], or child care center[s]" does *not* constitute punishment. *Shaw*, 823 F.3d at 559; *see Stein*, 112 F.4th

18

at 208; *Miller*, 405 F.3d at 705. Nor do similar restrictions on where an offender may work, volunteer, or "even visit[]." *Stein*, 112 F.4th at 209 n.8; *see id.* at 208; *McGuire*, 50 F.4th at 1008. Each of these measures is "consistent with the . . . regulatory objective of protecting the health and safety of children" by reducing sex-offender recidivism. *Miller*, 405 F.3d at 720; *see Stein*, 112 F.4th at 210–11; *McGuire*, 50 F.4th at 1008–16; *Shaw*, 823 F.3d at 573–75. If that aim can justify park bans, *see Doe v. City of Lafayette*, 377 F.3d 757, 766 n.8 (7th Cir. 2004), GPS monitoring, *see Belleau*, 811 F.3d at 937, and civil commitment, *see Miller*, 405 F.3d at 720–21, it can also justify the less onerous restrictions imposed under Tennessee law.

## II.     The Does have not shown that the equities favor a permanent injunction.

Should the Court deem the Does successful on the merits, it still should not issue a permanent injunction. The Does must carry the burden to show that considerations of equity favor such relief. *See eBay*, 547 U.S. at 391. But they have not done so, and they could not if they tried. Nothing in the record traces any irreparable harm to Director Rausch's conduct, and the broader equities and public interest cut strongly against permanent injunctive relief.

### A.     The Does cannot trace irreparable harm to Director Rausch.

The Does must show that "irreparable harm" will result in the absence of the injunction they seek — meaning the injunction they seek must be "*needed* to guard against a[] present or imminent risk of likely" injury. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010) (emphasis added). But nothing in the record shows that Director Rausch harms the Does in any direct or indirect way. Director Rausch publishes information about the Does' sexual offenses in a "constitutionally sound" and permissible manner. *Doe*, 102 F.4th at 339 (citing *Smith*, 538 U.S. at 90–91). And much of that information derives from "a criminal record, most of which is already public." *Smith*, 538 U.S. at 98. The Does have no constitutional right to suppress that information, and its accessibility on Tennessee's website "does not by itself prohibit [them] from pursuing any

vocation or avocation available to other members of the public." *Femedeer v. Haun*, 227 F.3d 1244, 1250 (10th Cir. 2000). They likewise have not shown that other state officers depend on Director Rausch for information, *see supra* Part I.A.2, or that an injunction against those officers would not be the more appropriate and equitable course (if justified).

Regardless, the Does could not make those showings because they could never muster the needed evidence. And that is because Tennessee's police officers and prosecutors do not depend on Director Rausch for registry information. Instead, local registering agencies already know the offenders in their territory because Tennessee law requires those offenders register in person and compels the local registering agencies to retain their own records. *See* Tenn. Code Ann. §§ 40-39-203(a)(1), 204(d), 208(a)(1). As for police officers out on patrol, they need not access any TBI resources; they can obtain relevant information from an offender's own identification, *see id.* § 213, as well as from the Department of Justice's National Crime Information Center (NCIC) database, *see* 28 U.S.C. § 534. Importantly, the federal government operates that database with input from countless federal, state, and local entities. *See United States v. McDowell*, 745 F.3d 115, 118 (4th Cir. 2014); *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1210 (10th Cir. 2006). And any officers who accesses the federal database must decide how, if at all, to use its contents. *See United States v. Romo*, 652 F. App'x 534, 535–36 (9th Cir. 2016); *United States v. Brown*, 618 F. App'x 743, 745 (4th Cir. 2015); *McDowell*, 745 F.3d at 122 & n.*. This informational environment limits the TBI's influence over local law enforcement, preventing any connection of irreparable harm to Director Rausch.

**B.     The Does cannot establish the broader equities of an injunction.**

For related reasons, the Does cannot show "that . . . the balance of hardships" and the "public interest" warrant "a permanent injunction." *eBay*, 547 U.S. at 391 (citing *Romero–Barcelo*,

456 U.S. at 311–13). Instead, to the extent those equities can be separated from the merits, they cut independently against injunctive relief.

Like all other States and the federal government, Tennessee regulates sex offenders for the sake of public safety. *See Smith*, 538 U.S. at 89–90. This coordinated project grew out of genuine concern over numerous high-profile incidents of offender recidivism and predation on children. *See Nichols v. United States*, 578 U.S. 104, 106 (2016); *Ross*, 848 F.3d at 1139 (Millett, J., concurring in part, dissenting in part, and dissenting from the judgment); Adam Walsh Act, Pub. L. No. 109-248, 120 Stat. 587 (2006); Pam Lynchner Act, Pub. L. No. 104-236, 110 Stat. 3093 (1996); Violent Crime Control and Law Enforcement Act, Pub. L. No. 103-322, § 170101, 108 Stat. 1796, 2038–42 (1994); *see also, e.g.*, *State v. Timmendequas*, 773 A.2d 18, 22 (N.J. 2001) (discussing the rape and strangulation of seven-year-old Megan Kanka); *Rassier v. Sanner*, Civil No. 17-938, 2017 WL 5956909, at *1 (D. Minn. Nov. 30, 2017) (discussing the kidnapping, sexual assault, and murder of eleven-year-old Jacob Wetterling); *People v. Davis*, 208 P.3d 78, 128–29 (Cal. 2009) (discussing the abduction, sexual assault, and murder of twelve-year-old Polly Klaas). And the courts have long blessed these regulations — especially those aimed at "disseminat[ing] information" — as justified by "the gravity of the [S]tate's interest in protecting the public from recidivist sex offenders." *Cutshall*, 193 F.3d at 475–76.

That interest justifies regulating the Does. It is a matter of undisputed fact that each Doe has committed at least one "violent sexual offense" or "[]other qualifying" crime triggering applicability of Tennessee's sex offender regulations. Tenn. Code Ann. § 40-39-202(30); *see* Defs.' Resp. Fact Stmt., R.128 at 2655. For Doe #2 and Doe #4, it was rape. *See* Pls.' Resp. Fact Stmt., R.125 at 2602–03. For Doe #8, it was aggravated rape of a minor. *See id.* at 2606. For Doe #7, it was seven separate counts of "lascivious acts" committed against "multiple children" under

fourteen. *Id.* at 2605. Tennessee's public has a keen and legitimate interest in preventing similar acts from occurring, and the Does have yet to offer any argument establishing why the public's interest should yield to the Does individual rights.

Instead, the Does have sought to dismantle Tennessee's regulations by improper and ill-conceived means. They started by suing two defendants "clear[ly]" incapable of "redress[ing]" their supposed injuries. *Doe*, 102 F.4th at 342. They moved forward by adopting theories and arguments that Sixth Circuit "precedent demanded" must fail. *Id.* at 338. They continue to pursue "prohibit[ions on] enforcement of" state regulatory measures "previously blessed by" binding authorities. *Id.* And at this late hour, they continue to enjoy exemption from state laws that lack any constitutional defect. *See id.* at 341.

None of this is equitable in any meaningful sense. Equity allows a person to challenge improper government action by suing the government officer who takes the improper action. *See supra* Part I.A.. Equity requires that person to prove his own entitlement to court-ordered relief. *See supra* at 6. Equity does not empower courts to make wide-ranging policy decisions irrespective of the theories and arguments raised by the parties. Equity does not allow for any injunctive relief to be maintained in this case.

## III. Any injunction must be prohibitory and narrow.

Should the Court nonetheless decide to issue an injunction, it can only grant prohibitory and narrow relief. In response to the Remand Order, Director Rausch has submitted as proposal as to how the TBI might provide local "officials . . . notice" of this litigation. Order, D.155 at 2853. But the Does have never argued that this Court can compel Director Rausch to execute such a plan. And in fact, this Court lacks such power; the Does cannot get a mandatory injunction.

This conclusion follows from *Ex parte Young* and the deep jurisprudential roots upon which the *Young* doctrine operates. To begin, the Does cannot bring suit against the State itself

because "the [C]onstitution of the United States" would "prohibit[]" them.  *Hagood v. Southern*, 117 U.S. 52, 67 (1886).  So instead, the Does must sue Director Rausch — who is both a "person" and a state officer.  42 U.S.C. § 1983.  But still, the propriety of the suit depends on the Does claims and requests for relief.  Specifically, it depends on whether "the relief sought" would be "relief against the sovereign" itself.  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949).  If not, the Court can grant such relief.  But if so, the Court cannot act.

The Supreme Court "ha[s] frequently . . . recognized" *only* "two types" of cases "in which a restraint may be obtained against the conduct of Government officials" notwithstanding their sovereign immunity.  *Id.* at 690  In the first, "the officer's powers are limited by statute," so "his actions beyond those limitations are considered individual and not sovereign actions."  *Id.* at 689.  In the second, more-common scenario, state "power has been conferred in form,"  but "the grant is lacking in substance because of its constitutional invalidity."  *Id.* at 690.  But a suit attempting to use the latter (*Ex parte Young*) line of precedent must "fail . . . *even if* it is claimed that the officer being sued has acted unconstitutionally . . . , *if* the relief [being] requested . . . will require *affirmative* action" on the officer's part.  *Id.* at 691 n.11 (emphasis added).

In fact, it was "well settled" long before *Ex parte Young* "that a suit against the officers of a state[] to *compel* them to do [certain] acts . . . is, in effect, a suit against the state itself."  *Pennoyer v. McConnaughy*, 140 U.S. 1, 9 (1891) (emphasis added).  *Young* only articulates and applies the fundamental principle that a law "repugnant to the [C]onstitution" can "furnish[] no authority."  *Id.* at 11 (quoting *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 859 (1824)).  "That is the rationale for stripping" a state officer "of his authority and [sovereign] immunity."  *Baker*, 698 F.2d at 1332.  But that rationale does not negate the cases foreclosing mandatory injunctions.

Instead, the two strains of jurisprudence comfortably exist side-by-side: "[a] broad line of demar[c]ation [still] separates . . . suits in equity" to *keep* a state officer from exercising "authority unconstitutional and void" from cases "in which decrees require, by affirmative official action . . . , the performance of an obligation [belonging] to the state." *Pennoyer*, 140 U.S. at 16–17 (quoting *Hagood*, 117 U.S. at 70). When "things required . . . to be done and performed" would "constitute a performance" by the State, "[t]he [S]tate is not only the real party to the controversy, but the real party against which relief is sought by the suit." *Hagood*, 117 U.S. at 67.

It follows that, to the extent the Does request an injunction requiring Director Rausch "to take affirmative action" as an "officer[] of the State," Tennessee's sovereign immunity "bars any consideration of [such relief by] this [C]ourt." *Kirker v. Moore*, 308 F. Supp. 615, 624 (D. W. Va. 1970). "[I]t is one thing to provide a method by which a citizen may be [protected from] a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers . . . to compel [the Government] to act." *Larson*, 337 U.S. at 704. It is thus "permissible under *Ex parte Young* for a court to 'command[] a state official to do nothing more than refrain from violating federal law.'" *Tex. Democratic Party*, 978 F.3d at 180 (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). But "[t]he [State] . . . represent[s] . . . the community as a whole," and the "strongest reasons of public policy" protect state officers from compulsion. *Larson*, 337 U.S. at 704.

This leaves the Does one permissible option: seek an injunction "no broader than necessary to remedy [any] constitutional violation[s]." *Kallstrom*, 136 F.3d at 1069 (citing *Knop v. Johnson*, 977 F.2d 996, 1008 (6th Cir. 1992). In this case, that means no injunction at all due to the binding precedent and the Doe's inadequate record. *See supra* Parts I.A.2, I.B. But if the Court does issue an injunction, that injunction must be appropriately delineate and justified: the Court "must: (A)

state the reasons why [the injunction] issued; (B) state [its] terms specifically; and (C) describe in reasonable detail" what powers Director Rausch is "restrained" from exercising. *Union Home*, 31 F.4th at 362 (quoting Fed. R. Civ. P. 65(d)(l)). In this case, the Court can readily pinpoint "exactly what conduct is proscribed" because Director Rausch's official conduct flows from statutes enumerating his official authorities. *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (5th Cir. 1975)); *see Doe*, 102 F.4th at 341–42. If the Does can identify "any unconstitutional provisions of . . . Tennessee [law]" that Director Rausch executes, the Court can craf an injunction appropriately limiting Director Rausch's conduct by forbidding his exercise of those authorities. *Doe*, 102 F.4th at 341. But if the Does fail to make such a showing, no injunction can issue in this case. *See id.*

*   *   *

For years district courts misinterpreted *Snyder*, and for years the Tennessee public paid the price. But *Snyder* has no application to this case, and it has little of significance to say regardless. Courts decide legal disputes based on the arguments presented to them by the parties. The forfeiture of arguments by Michigan attorneys ten years ago should not dictate public policy in Tennessee. For the Does, this means that the case has to reach a dead end without relief. This Court can "say with finality that Director Rausch does not enforce any unconstitutional provisions of . . . Tennessee [law]." *Doe*, 102 F.4th at 341. That is precisely what this Court should do.

## CONCLUSION

The Court should enter judgment without granting permanent injunctive relief.

## MASTER LIST APPENDIX

This Court has ordered Director Rausch to provide "a copy of the Master List" of registry provisions alongside this brief, and for "each entry" identify whether the provision at issue "is punitive" or otherwise "comparable" to an already-adjudicated statute. Order, D.155 at 2853. Director Rausch humbly and respectfully maintains that the Does bear the burden of proving entitlement to summary judgment and injunctive relief, which includes an obligation to put specific provisions at issue and prove such provisions conflict with the *Ex Post Facto* Clause. *See supra* Part I.A. Director Rausch also humbly and respectfully maintains that the Does have not and cannot carry that burden, even if they were to identify specific provisions of law to put at issue. *See supra* Part I.B. To satisfy his briefing obligations, Director Rausch submits the Appendix below to describe the nature of various provisions and some of the precedent supporting their constitutionality.

| Code Cite | Description | Validity |
|---|---|---|
| **§ 202(30)** | Statutory definition of "violent sexual offender" | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Bredesen*, 507 F.3d at 1001; 2000 Tenn. Pub. Acts ch. 997 (Addendum, D.159-2 at 2992–93). |
| **§ 203(a)–(h)** | Registration requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *Bredesen*, 507 F.3d at 1005; *see also* 2004 Tenn. Pub. Acts ch. 921 (Addendum, D.159-3 at 3069–73). |
| **§ 203(i)(1)–(15), (19)** | Disclosure requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339, 341; *Bredesen*, 507 F.3d at 1002; *see also* 2004 Tenn. Pub. Acts ch. 921 (Addendum, D.159-3 at 3071–72). |
| **§ 203(i)(16)–(18), (20)–(21)** | Additional disclosure requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339, 341; *see also* 2008 Tenn. Pub. Acts ch. 1164 (Addendum, D.159-4 at 3246); 2010 Pub. Acts ch. 1138 (Addendum, D.159-4 at 3346). |
| **§ 203(j)** | Registration requirement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *Bredesen*, 507 F.3d at 1005; *see also* 1994 Tenn. Pub. Acts ch. 976 (Addendum, D.159-1 at 2889–91). |
| **§ 203(m)** | TBI power to distribute information regarding a registrants electronic accounts and personas | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 (citing *Smith*, 538 U.S. at 105–06); *see also* 2008 Tenn. Pub. Acts ch. 979 (Addendum, D.159-4 at 3232). |

| Code Cite | Description | Validity |
|---|---|---|
| **§ 203(n)** | DNA sample requirement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *United States v. Coccia*, 598 F.3d 293, 298 (6th Cir. 2010); *see also* 2008 Tenn. Pub. Acts ch. 1164 (Addendum, D.159-4 at 3248). |
| **§ 203(o)** | Requirement to meet new disclosure requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339, 341; *Bredesen*, 507 F.3d at 1002; *see also* 2008 Tenn. Pub. Acts ch. 1164 (Addendum, D.159-4 at 3248). |
| **§ 203(p)** | Post-halfway house registration requirement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *see also* 2011 Tenn. Pub. Acts ch. 222 (Addendum, D.159-5 at 3388). |
| **§ 204(b)(1), (c)** | Quarterly and annual reporting requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *Bredesen*, 507 F.3d at 1005; *see also* 1994 Tenn. Pub. Acts ch. 976 (Addendum, D.159-1 at 2891) (quarterly mail-in reporting); 2004 Pub. Acts ch. 921 (Addendum, D.159-3 at 3072) (quarterly in-person reporting). |
| **§ 204(b)(1), (c)** | Registration fee | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339; *Bredesen*, 507 F.3d at 1005; *Hope*, 9 F.4th at 520; *Mueller v. Raemisch*, 740 F.3d 1128, 1135 (7th Cir. 2014); *see also* 2004 Tenn. Pub. Acts ch. 921 (Addendum, D.159-3 at 3072). |
| **§ 204(c), (f)** | Post-nursing home registration requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *see also* 2008 Tenn. Pub. Acts ch. 1164 (Addendum, D.159-4 at 3249). |

| Code Cite | Description | Validity |
|-----------|-------------|----------|
| **§ 204(e)** | Reincarceration- and deportation-related reporting requirements | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *Bredesen*, 507 F.3d at 1005; *see also* 2004 Tenn. Pub. Acts ch. 921 (Addendum, D.159-3 at 3073, 3077). |
| **§ 204(g)** | Homeless-reporting requirement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *Bredesen*, 507 F.3d at 1005; *see also* 2004 Tenn. Pub. Acts ch. 921 (Addendum, D.159-3 at 3073). |
| **§ 204(h)** | Travel reporting requirement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339 n.2; *see also* 2011 Tenn. Pub. Acts ch. 266 (Addendum, D.159-5 at 3394). |
| **§ 206(d)** | TBI power to publish certain reported information | • Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Smith*, 538 U.S. at 91; *Doe*, 102 F.4th at 339, 341; *see also* 1994 Tenn. Pub. Acts ch. 976 (Addendum, D.159-1 at 2893) (allowing release of information necessary to protect the public); 2005 Tenn. Pub. Acts ch. 316 (Addendum, D.159-3 at 3116) (requiring internet publication of certain public registry information); 2007 Tenn. Pub. Acts ch. 531 (Addendum, D.159-4 at 3202) (designating additional registry information as public). |
| **§ 207** | Length of reporting and compliance, up to and including lifetime | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Smith*, 538 U.S. at 90; *Doe*, 102 F.4th at 339 n.2; *Bredesen*, 507 F.3d at 1001 & n.3; *see also* 1994 Tenn. Pub. Acts ch. 976 (Addendum, D.159-1 at 2893); 2004 Tenn. Pub. Acts ch. 921 (Addendum, D.159-3 at 3076–77); 2006 Tenn. Pub. Acts ch. 890 (Addendum, D.159-3 at 3154–55); 2008 Tenn. Pub. Acts ch. 1164 (Addendum, D.159-4 at 3251). |

| Code Cite | Description | Validity |
|---|---|---|
| **§§ 208, 211(f)–(g)** | Fines and criminal penalties for failure to comply with obligations | • Establishes that non-party police and prosecutors enforce the "potentially unconstitutional portions" of Tennessee law. *Doe*, 102 F.4th at 341.<br>• Cannot form the basis of an *Ex Post Facto* Clause claim independent of other statutory terms. *See Felts*, 674 F.3d at 606. |
| **§ 209** | Limitation on records expungement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 341; *Bredesen*, 507 F.3d at 1001; *see also* 1997 Tenn. Pub. Acts ch. 455 (Addendum, D.159-1 at 2944). |
| **§ 211(a)** | 1,000-foot residency and employment restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Stein*, 112 F.4th at 208; *McGuire*, 50 F.4th at 1008–16; *Hope*, 9 F.4th at 520, 530–34; *Vasquez*, 895 F.3d at 517, 522; *Shaw*, 823 F.3d at 559, 573–75; *Miller*, 405 F.3d at 705, 720. |
| **§ 211(b)** | Former-victim access restrictions | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2. |
| **§ 211(c)** | Overnight stay restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *McGuire*, 50 F.4th at 1010. |
| **§ 211(d)(1)** | Child-avoidance premises restrictions | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Stein*, 112 F.4th at 208–09 & n.8; *McGuire*, 50 F.4th at 1008–16; *City of Lafayette*, 377 F.3d at 766 n.8. |
| **§ 211(h)** | Cohabitation restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2. |
| **§ 211(k)** | Child-isolation restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Stein*, 112 F.4th at 208–09 & n.8. |

| Code Cite | Description | Validity |
|:---:|:---|:---|
| **§ 213** | Identification requirement | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *McGuire*, 50 F.4th at 994; *see also* 2008 Pub. Acts ch. 1143 (Addendum, D.159-4 at 3262). |
| **§ 215(a)(1)(A)** | Impersonation restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2. |
| **§ 215(a)(1)(B)** | Employment-based child access restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Stein*, 112 F.4th at 208–09 & n.8; *McGuire*, 50 F.4th at 1009. |
| **§ 215(a)(1)(C)** | Child-attractive-vehicle restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2. |
| **§ 215(b)** | Swimming pool and hot-tub rental restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2. |
| **§ 216** | Library-access restriction | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Stein*, 112 F.4th at 208–09 & n.8. |
| **§ 217(a)(2)** | Community-notification fee | • Not at issue. *See supra* Part I.A.<br>• Not retroactive. *See supra* Part I.B.1.<br>• Not punitive. *See supra* Part I.B.2; *Doe*, 102 F.4th at 339; *Bredesen*, 507 F.3d at 1005; *Hope*, 9 F.4th at 520; *Mueller*, 740 F.3d at 1135. |

Dated: December 9, 2024                    Respectfully Submitted,

                                           JONATHAN SKRMETTI
                                            *Tennessee Attorney General & Reporter*

                                           CODY BRANDON
                                            *Managing Attorney*

                                           MIRANDA JONES
                                            *Senior Assistant Attorney General*

                                           */s/ Gabriel Krimm*
                                           GABRIEL KRIMM
                                            *Senior Assistant Solicitor General*
                                           Office of the Tennessee
                                            Attorney General & Reporter
                                           P.O. Box 20207
                                           Nashville, Tennessee 37202-0207
                                           (615) 532-5596
                                           BPR No. 036087
                                           Gabriel.Krimm@ag.tn.gov
                                            *Counsel for the TBI Director*

**CERTIFICATE OF SERVICE**

I certify that I filed the above document using the Court's CM/ECF system on December 9,

2024, which electronically served a copy to all counsel of record, namely:

**W. Justin Adams**
**Edward M. Yarbrough**
**Jonathan P. Farmer**
 *Counsel for Plaintiffs*

**Cody N. Brandon**
**Miranda Jones**
**Gabriel Krimm**
 *Counsel for the TBI Director*

*/s/ Gabriel Krimm*
Gabriel Krimm
