## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |  |
|---|---|---|---|
| **JOHN DOE #1–9,** | ) | | |
| | ) | **Case Nos.** | **3:21-cv-00590** |
| **Plaintiffs,** | ) | | **3:21-cv-00593** |
| | ) | | **3:21-cv-00595** |
| **v.** | ) | | **3:21-cv-00596** |
| | ) | | **3:21-cv-00597** |
| **WILLIAM B. LEE, in his official capacity** | ) | | **3:21-cv-00598** |
| **as GOVERNOR OF TENNESSEE,** *et al.*, | ) | | **3:21-cv-00624** |
| | ) | | **3:21-cv-00671** |
| **Defendants.** | ) | **Judge Aleta A. Trauger** | |

## MEMORANDUM

Following partial reversal of this court's prior ruling and remand by the Sixth Circuit Court of Appeals, now before the court are (1) a Motion to Modify Injunction (Doc. No. 162) filed by plaintiffs John Doe #1, #2, #4, #5, #6, #7, #8, and #9; and (2) the "Opening Motion for a Denial of Injunctive Relief" (Doc. No. 160) filed by defendant David Rausch, sued in his official capacity as the Director of the Tennessee Bureau of Investigation (the "Director" or "TBI Director").[1] For the reasons set forth herein, the Director's motion will be denied, and the plaintiffs' motion will be granted in part and denied in part.

## I. PROCEDURAL HISTORY

This case has a lengthy history, and this opinion presumes some familiarity with the underlying facts and legal issues, which, for the most part, will not be reiterated here. The court will set out sufficient background information to make the ruling comprehensible.

---

[1] Governor William B. Lee has been dismissed as a defendant, leaving Director Rausch as the sole defendant. (Doc. No. 155.)

The eight remaining plaintiffs were sentenced for sexual offenses between 1982 and 1994.[2] They each filed a separate Complaint against William Lee, the Governor of Tennessee, and the Director, both in their official capacity only, challenging Tennessee's 2004 Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("TSORA" or the "Act") and subsequent amendments as unconstitutional as applied to the plaintiffs— specifically on the basis that the Act, as amended, violates the Ex Post Facto Clause of the United States Constitution.

The Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. "The *ex post facto* clause is implicated where a law punishes retrospectively; '[a] law is retrospective if it changes the legal consequences of acts completed before its effective date.'" *United States v. Davis*, 397 F.3d 340, 347 (6th Cir. 2005) (internal quotation marks omitted) (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)). The Supreme Court has long held that this provision "does not bar *all* retroactive lawmaking, but only retroactive *punishment*." *Does #1-5 v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016) (citation omitted) (second emphasis added). The plaintiffs in this case contend that the TSORA—or at least part of it—is both retroactive and punitive as applied to them and, therefore, unconstitutional.

In late 2021, following consolidation and reassignment of the plaintiffs' cases to the undersigned, the court granted preliminary injunctive relief to the plaintiffs. (Doc. No. 76.) In March 2023, the court denied the defendants' Motion for Summary Judgment, granted the plaintiffs' Motion for Summary Judgment on the basis that application of the Act to the plaintiffs violated the Ex Post Facto Clause, and converted the preliminary injunction into a permanent

---

[2] Plaintiff John Doe #3, one of the original nine plaintiffs, died on January 26, 2023, and his estate elected not to pursue his claims. (*See* Doc. No. 141.)

injunction. (Doc. Nos. 134, 135.) Specifically, the court enjoined the defendants from enforcing any provision of the Act against the plaintiffs and from requiring the plaintiffs to comply with any portion of the Act. It also directed them to take all reasonably necessary steps within their power to ensure that the plaintiffs are not included on Tennessee's sexual offender registry and are not mistakenly treated as if they are or should be included on the registry by state, local or other officials who rely on the defendants for registry-related information. (Doc. No. 135.) In addition, the court granted the plaintiffs' request for a declaratory judgment and issued a declaration that "the retroactive application of Tennessee's sexual offender registry-related laws to these plaintiffs for crimes that they committed prior to the effective date of the statute creating that registry would violate the . . . Ex Post Facto Clause of the [U.S.] Constitution." (*Id.* at 2.)

The defendants appealed, and the Sixth Circuit reversed in part and remanded with instructions that this court vacate the declaratory judgment, dissolve the injunction against Governor Lee, dismiss the Governor from the suit based on lack of standing, and modify the injunction against the Director, "consistent with [that] opinion." *Doe v. Lee*, 102 F.4th 330, 332 (6th Cir. 2024). The appellate court explained in its opinion that the plaintiffs lacked standing to sue Governor Lee, as they failed to show that he had any role in the enforcement of individual criminal laws in the state or that he had otherwise done anything, or was doing anything, that might injure the plaintiffs. *Id.* at 335–36.[3] "On the other hand," the Sixth Circuit affirmatively found that the plaintiffs had standing to sue the Director, noting, in fact, that the defendants "apparently

---

[3] Because the Sixth Circuit found that the plaintiffs lacked standing to sue Governor Lee, it did not reach his alternative sovereign immunity argument. *See Doe v. Lee*, 102 F.4th at 336. This court notes that, while the defendants asserted in their Answer that the Governor was not responsible for enforcing SORA and was "not a proper party to this complaint" (*see, e.g.*, Doc. No. 67 at 2, 11), the defendants did not raise standing or sovereign immunity relating to either defendant in their Motion for Summary Judgment or in their Response to the plaintiffs' Motion for Summary Judgment (Doc. Nos. 116, 127).

concede that Plaintiffs have standing to sue Director Rausch" and "admit that a 'challenge to [Rausch's] authorities could fit within *Ex parte Young*." *Id.* at 336 & n.1. Moreover, the court found that

> Director Rausch is tasked with a number of statutory duties related to the administration of Tennessee's sex offender statutes against the Plaintiffs. This responsibility serves to fulfill all three elements of standing; a potential injury-in-fact flowing from his administration of the statute, which is traceable to him through his responsibility, and redressable by a court order.

*Id.* at 336 (citations omitted).

Turning to the merits of the plaintiffs' claim against the Director, the court referenced the framework for analyzing whether a retroactive law is punitive in violation of the Ex Post Facto Clause, as articulated in *Smith v. Doe*, 538 U.S. 84, 97 (2003), and *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), and summarized Supreme Court and Sixth Circuit precedent addressing retroactive laws targeting sexual offenders. Specifically, the court noted that, in *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), it had upheld a predecessor to the current Act, "finding that its reporting and registration requirements did not violate the Ex Post Facto Clause." *Doe v. Lee*, 102 F.4th at 337 (citing *Cutshall*, 193 F.3d at 476–77). A few years after *Cutshall*, the Sixth Circuit "upheld an early version" of the current Act "against a nearly identical challenge," finding "no reason to deviate from its previous conclusion—and that of other circuits—that the law did not violate the Ex Post Facto Clause." *Id.* (citing *Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007)). As the court noted in *Doe v. Lee*, however, the version of the Act in effect at the time of *Bredesen* "did not impose any restrictions on where registrants could live, work, or move." *Id.*

In 2016, the Sixth Circuit considered Michigan's sex offender registry law, which is similar to the TSORA, and enjoined the *ex post facto* enforcement of two amendments that "prohibited registrants 'from living, working, or "loitering" within 1,000 feet of a school' and required 'all registrants to appear in person "immediately" to update information such as new vehicles or

"internet identifiers" (*e.g.*, a new email account).'" *Id.* (quoting *Snyder*, 834 F.3d at 698). Applying the *Mendoza-Martinez* factors in that case, the court found that the two amendments went far beyond the Alaska law authorizing publicly available registries of sex offenders at issue in *Smith v. Doe*, insofar as they subjected Michigan's registrants to "onerous conditions that closely resembled 'banishment and public shaming, and [had] a number of similarities to parole/probation.'" *Id.* at 338 (quoting *Snyder*, 834 F.3d at 703). Based on these findings, the court held that the amendments "imposed punishment" and that their retroactive application to the plaintiffs, whose offenses were completed well before the amendments went into effect, was unconstitutional and "must therefore cease." *Id.* (quoting *Snyder*, 834 F.3d at 706).

In the appeal of this case, the Sixth Circuit synthesized *Smith*, *Cutshall*, *Bredesen*, and *Snyder* to hold as follows:

> [A]ny provisions of Tennessee's Act analogous to those discussed in *Smith*, *Bredesen*, *and Cutshall* pass constitutional muster. But those which mirror Michigan's 2006 and 2011 amendments to [the Michigan Sex Offender Registry Act ("SORA")], enjoined by *Snyder*, must fail. Full analysis of the *Mendoza-Martinez* factors is not necessary because the provisions of Tennessee's Act are either the same as or directly mirror those discussed in this court's prior cases; this dispute can be resolved simply by applying our binding precedent. "The Acts' registration, reporting, and surveillance components are not of a type that we have traditionally considered as a punishment." *Bredesen*, 507 F.3d at 1005. So, a registry kept by the state and disclosed publicly is constitutionally sound. *Smith*, 538 U.S. at 90–91. But,
>
>> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting . . . is something altogether different from and more troubling than Alaska's first-generation registry law.
>
> *Snyder*, 834 F.3d at 705. Such requirements treat registrants like "moral lepers" and "consign[] them to years, if not a lifetime, of existence [on] the margins, not only of society, but often . . . from their own families." *Id.*

*Id.* at 339–40. Accordingly, the Sixth Circuit stated—seemingly unequivocally—that, while the

parts of the Tennessee Act that correspond to those parts of the Michigan amendments that were enjoined in *Snyder* "may be inflicted on those convicted after the Act's effective date, *they may not be retroactively enforced upon the Plaintiffs*." *Id.* at 340 (emphasis added).[4] The court also concluded, however, that elision of the statute, rather than enjoining the entire statutory scheme, was required, meaning that this court, upon remand, should "look at each restriction [of the Act], compare it to the guidance issued in *Smith*, *Cutshall*, *Bredesen*, *and Snyder*, apply the *Mendoza-Martinez* factors where those cases come up short, and issue a remedy tailored to the statute." *Id.* at 341.

Finally, the appellate court turned to the defendants' argument (raised for the first time on appeal) that Rausch was not tasked with enforcement of those parts of the Act that might be deemed to violate the Ex Post Facto Clause. The court stated:

> According to Tennessee law, Director Rausch, the sole Defendant left in this case, is responsible for designing and issuing the forms which registrants use to report their information, creating and maintaining the registry database, disseminating that information to prosecutors and law enforcement, facilitating other agencies' entry of new data into the registry, and managing the repository of original registry forms. All of these functions fall squarely within the legitimate regulatory scheme which Tennessee is constitutionally allowed to provide and maintain. The potentially unconstitutional portions—those provisions categorizing offenders and prohibiting them from living, working, and traveling within certain areas—are enforced by a diffusion of state officers and prosecutors which are not parties here. Based on the record before this court, we cannot say with finality that Director Rausch does not enforce any unconstitutional provisions of the Tennessee Act, but the district court can make that determination on remand.

> The only injunction potentially warranted against Director Rausch would be a limited one prohibiting him from exercising his limited record-keeping powers under Tennessee law in a way that violates Plaintiffs' rights under our Ex Post Facto Clause analysis. Therefore, to the extent his office categorizes registrants based on the crime of their conviction and without an individualized assessment, that

---

[4] Despite this seemingly broad sweep, the Sixth Circuit also observed that *Snyder* "does not call into question Tennessee's in-person reporting requirements" and, in view of the differences between the statutory schemes, did not require enjoining Tennessee's in-person reporting requirements. *Doe v. Lee*, 102 F.4th at 339 n.2.

function may be questionable under *Snyder*. But Director Rausch cannot be enjoined from enforcing provisions of the Act which he does not enforce—in fact, just to state the proposition highlights the circularity of such an injunction. That would be a clear redressability issue, thereby throwing standing into question.

*Doe v. Lee*, 102 F.4th at 341–42 (citations and footnote omitted). The court also noted that it was "questionable" whether the Director could be "forced to provide a remedy he is statutorily prohibited from providing." *Id.* at 342 n.3 (citing Tenn. Code Ann. § 40-39-209 (providing that "no record shall be removed from the [registry] unless ordered by a court of competent jurisdiction as part of an expunction order")).

This court, in accordance with the Sixth Circuit's instructions, issued a post-remand order vacating the Order and Entry of Judgment (Doc. Nos. 135, 136), granting in part the defendants' Motion for Summary Judgment with respect to the claims against Governor Lee, and dismissing all claims against the Governor. (Doc. No. 155.) In addition, however, the court reaffirmed its prior holding that the plaintiffs were entitled to summary judgment, at least in part. (*See id.* at 5–6 (noting that it "continues to be the case that the plaintiffs have established, through undisputed facts, that the Director caused them to be subject to at least one retroactive, punitive requirement under *Snyder*.").) The court also ordered the parties to brief the two unresolved issues identified by the Sixth Circuit that had not been addressed in the parties' summary judgment filings. That is, the court concluded that, aside from dismissing the Governor, the Sixth Circuit's ruling required modification of the injunction in two ways: "first, [the court] must limit [the injunction] to the provisions found to be punitive based on a 'provision-by-provision analysis' [of the Act]; and, second, it must craft the injunction to focus, in particular, on what the Director can and cannot do under Tennessee's scheme." (*Id.* at 4 (quoting *Doe v. Lee*, 102 F.4th at 340).)

The court ordered the parties to: (1) jointly submit a numbered "Master List" of all requirements "associated with the Tennessee sexual offender registry"; (2) each file a Motion to

Modify Injunction, accompanied by a supporting Memorandum; and (3) include with their respective Memoranda a copy of the Master List, noting with respect to each entry the party's position on whether the provision is punitive and providing citations to relevant caselaw in support of the party's position. The court ordered the Director to file with his motion declarations or other materials "setting out a plan pursuant to which the Director will ensure that officials who access the plaintiffs' registry entries will be placed on notice regarding which restrictions or requirements apply to the plaintiffs and which do not." (*Id.* at 9–10.)

The parties have now filed their respective motions and memoranda, responses, and replies, as directed by the same order.[5] They filed a Joint Master List (Doc. No. 158), as well as an Addendum "compiling the separate legislative acts that created and amended Tennessee's sex offender regulation regime between 1994 and 2023," and a table identifying the "sixty-seven pieces of legislation from over two-dozen legislative sessions." (Doc. No. 159 at 1; *see id.* at 2 (table) and attachments thereto.) While objecting that he has no responsibility for placing officials who access the sex offender registry on notice of "which restrictions or requirements apply to the plaintiff," the Director filed the Declaration of Shelly Smitherman to "fulfill his obligations under the Remand Order." (Doc. No. 160 at 1–2; *see also* Doc. No. 160-1, Smitherman Decl.)

## II.    THE DIRECTOR'S MOTION

The Director, disregarding the court's previous determination that the plaintiffs remained entitled to summary judgment, at least in part, moves for an order "vacating [the] present injunction and denying all permanent injunctive relief." (Doc. No. 160 at 1.) In his supporting Memorandum, the Director argues more specifically that the plaintiffs are not entitled to a permanent injunction,

---

[5] As noted, the Director's is not styled as a Motion to Modify Injunction but, instead, as his "Opening Motion for a Denial of Injunctive Relief." (Doc. No. 160.)

because (1) their claims lack legal merit; (2) they have not shown that the equities favor permanent injunctive relief; and (3) the court cannot "force Director Rausch to take any affirmative action," as opposed to simply prohibiting him from continuing to engage in conduct that violates the plaintiffs' constitutional rights. (Doc. No. 161 at 13.) The court addresses each of these arguments in turn.

### A. Whether the Plaintiffs' Claims Lack Legal Merit

#### 1. The Act Is Both Retroactive and Punitive

Under his broader argument that the plaintiffs' claims are substantively without merit, the Director raises several sub-arguments, including that the Act as a whole does not violate the Ex Post Facto Clause because its requirements are neither retroactive nor punitive. At the summary judgment stage, the Director did not argue that the Act is not retroactive as applied to sex offenders sentenced prior to its enactment. He apparently raised the argument on appeal but the Sixth Circuit declined to address it. The court finds that this argument, at this late stage, is both waived and futile. The Act is clearly retrospective insofar as it "changes the legal consequences of acts completed before its effective date." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (citation and internal quotation marks omitted).

The Director's arguments that the Act as a whole is not "punitive" warrants hardly more discussion. At least with respect to the classification provisions and geographical restrictions that effectively mirror analogous provisions in Michigan's SORA (as discussed in greater detail in conjunction with review of the plaintiffs' motion), the Sixth Court confirmed that these provisions are, in fact, punitive, as set forth above, stating plainly that the provisions of the Tennessee Act that "mirror Michigan's 2006 and 2011 amendments to SORA, enjoined by *Snyder*, must fail" and that a "[f]ull analysis of the *Mendoza-Martinez* factors"—*i.e.*, the test for determining whether a retroactive law is punitive—"is not necessary." *Doe v. Lee*, 102 F.4th at 339. Only for provisions

of the Tennessee law that do not mirror those already addressed in *Smith*, *Cutshall*, *Bredesen*, *and Snyder*, would application of the *Mendoza-Martinez* factors be warranted. *See id.* at 341. Based on *Doe v. Lee*, the court reaffirms that the classification provisions and geographic restrictions in the TSORA, which mirror those in the Michigan SORA, are clearly punitive.

Setting aside the classification provisions and geographic restrictions, the Director argues that the reporting and publication provisions and the lifetime compliance provisions are not clearly punitive. The plaintiffs here do not challenge these requirements, *per se*, and the court agrees that they are not punitive under existing precedent.[6]

### 2. Rausch's Authority to Enforce the Act

The Director's central argument is that he is immune from suit unless the plaintiffs can show that their claims fall within the *Ex parte Young* exception to sovereign immunity, which, he contends, they cannot do. The defendants raised this argument for the first time on appeal,[7] and, as it implicates standing as well as sovereign immunity, the Sixth Circuit considered it but did not resolve the issue with respect to the Director. Instead, the court simply noted that it could not "say with finality that Director Rausch does not enforce any unconstitutional provisions of the

---

[6] Other provisions the plaintiffs seek to enjoin are addressed in the context of the ruling on their motion, below.

[7] Rausch, in fact, has been named as a defendant in many similar cases but does not appear ever to have raised the issue of whether he was an appropriate defendant until the appeal in this case. *See, e.g.*, *Doe v. Rausch*, No. 1:22-cv-01131-STA-jay, 2023 WL 3938878, at *3 (W.D. Tenn. June 9, 2023) (granting preliminary injunction against Rausch); *Doe #12 v. Lee*, No. 3:22-cv-00712, 2023 WL 1974712, at *3 (M.D. Tenn. Feb. 10, 2023) (same); *Doe v. Rausch*, 659 F. Supp. 3d 895, 896 (M.D. Tenn. 2023) (Campbell, J.) (granting in part plaintiff's motion for summary judgment against Rausch); *Reid v. Lee*, 597 F. Supp. 3d 1177 (M.D. Tenn. 2022) (granting summary judgment against Rausch and others); *Doe #11 v. Lee*, 609 F. Supp. 3d 578, 584 (M.D. Tenn. 2022) (Richardson, J.) (granting preliminary injunction against Rausch); *Jordan v. Lee*, No. 3:19-cv-00907, 2022 WL 1196980, at *19 (M.D. Tenn. Apr. 21, 2022) (granting summary judgment against Rausch); Doe #1 v. Lee, 518 F. Supp. 3d 1157, 1204 (M.D. Tenn. 2021) (Richardson, J.) (granting in part plaintiffs' motion for summary judgment against Rausch); *Doe v. Rausch*, 382 F. Supp. 3d 783 (E.D. Tenn. 2019) (entering permanent injunction against Rausch).

Tennessee Act" and left to this court on remand the task of "mak[ing] that determination," cautioning only that Rausch "cannot be enjoined from enforcing provisions of the Act which he does not enforce." *Doe v. Lee*, 102 F.4th at 342.

a)     *Ex parte Young*

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And a suit against the official's office is "no different from a suit against the State itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). "The Eleventh Amendment 'deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity.'" *Doe v. DeWin*e, 910 F.3d 842, 848 (6th Cir. 2018) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015)). However, under the *Ex parte Young* exception, "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Id.* (quoting *Price v. Medicaid Dir.*, 838 F.3d 739, 746–47 (6th Cir. 2016)); *see also Ex parte Young*, 209 U.S. 123, 159 (1908).

"*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Russell*, 784 F.3d at 1047 (quoting *Child.'s Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)). And, in the last several years, the federal courts of appeal have begun to "engage more thoroughly and much more frequently the question of precisely which state officers have a sufficient connection to enforcement of the challenged law or regulation so as to be subject to federal injunctions under the *Ex Parte Young* doctrine." 17A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4232 (3d ed.) (updated October 24, 2025); *see id.* § 4232 nn. 35.25 & 2 (collecting cases).

Despite such attention, the law in this area remains somewhat undeveloped. Nonetheless, the Sixth Circuit has indicated that, to fall within the scope of *Ex parte Young*, "a state official must possess 'some connection with the enforcement of the [challenged law]' and must 'threaten [or] be about to commence proceedings'—that is, it must be likely that the official will enforce the law against the plaintiff." *DeWine*, 910 F.3d at 848 (first quoting *Ex parte Young*, 209 U.S. at 157; and then quoting *Russell*, 784 F.3d at 1048). The plaintiff in *DeWine* sued the Ohio Attorney General and the Superintendent of the Ohio Bureau of Criminal Investigations (the TBI Director's Ohio counterpart), challenging parts of Ohio's sex offender registry laws on the basis that they violated her federal due process rights. The defendants argued that they were not the right defendants because they could not "enforce Doe's compliance—or prosecute her noncompliance—with the challenged registration requirements." *Id.* The Sixth Circuit found that the Superintendent's lack of criminal enforcement power did not preclude suit under *Ex parte Young. See id.* at 348 ("[L]ack of direct criminal enforcement authority does not foreclose Doe's reliance on *Ex parte Young*."). The court held that the claims against both defendants fell within the *Ex parte Young* exception, insofar as, among other things, they were both "'actively involved with administering' the sex-offender laws: they promulgate regulations implementing the sex-offender registration requirements; operate the state-wide sex-offender database; and send and structure community notifications that alert citizens to the proximity of registered offenders." *Id.* at 849 (quoting *Russell*, 784 F.3d at 1048). Further, in that case, because the plaintiff sought to enjoin the "injurious publication of her 'sexual predator' classification until she receives a due process hearing" (which the defendants admittedly had no power to order), there was a "realistic probability" that the defendants, as the "state officials tasked with publishing that information," would "disseminate the allegedly false information about Doe," as they were already doing so. *Id.*

Not dissimilarly, the Eighth Circuit held in *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025), that the Commissioner of the Minnesota Department of Public Safety was a proper defendant under *Ex parte Young* in a case challenging the constitutionality of Minnesota laws that (1) criminalized carrying handguns without a carry permit and (2) barred anyone under age 21 from obtaining a carry permit. *Id.* at 683. The court there summarily rejected the Commissioner's attempt to invoke sovereign immunity, finding it clear that the Commissioner "had some connection with enforcing the statutory scheme," insofar as he had "several duties connected with the statute's enforcement," including "making application forms available on the internet, providing relevant data to Sheriffs, and collecting processing and renewal fees," as well as "adopt[ing] statewide standards governing the form and contents of all permit-to-carry applications." *Id.* at 684 n.3; *see also Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) ("All that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." (quotation marks and citations omitted)).

> b) *Enforcement Authority Related to the Act's Classification Provisions*

Here, the plaintiffs seek to enjoin, in particular, the classification provisions pursuant to the definitions supplied in Tenn. Code Ann. § 40-39-202, subsection (10) (defining "Offender against children") and subsection (30) (defining "Violent sexual offender"). The court has no difficulty concluding that Rausch falls within the *Ex parte Young* exception with respect to enforcement of the challenged classifications. The TBI—the office Rausch represents—is specifically tasked by the Act ("shall") to "classify a person who is required to register pursuant to this part with a qualifying conviction under § 40-39-202, or who is required to register pursuant to § 40-39-203(a)(2) as a sexual offender, violent sexual offender, or violent juvenile sexual offender, and whether an offender is an offender against children, as defined in § 40-39-202" and to "notify the offender of the classification." Tenn. Code Ann. § 40-39-218(a), (c).

In other words, Rausch clearly has a specific connection with the enforcement of the challenged classifications. A finding that classifying the plaintiffs as "violent sexual offenders" and "offenders against children" is unconstitutional can be remedied by enjoining Rausch from making and enforcing such classifications under § 40-39-218 and ordering him, instead, to exercise his statutory duty in a way that does not violate the plaintiffs' rights by classifying them simply as "sexual offenders" and providing them notice of that classification. Rausch does not have sovereign immunity from this challenge.

c) *Enforcement Authority Related to Geographic Restrictions*

The plaintiffs also seek to enjoin the geographic restrictions in the Act, contained primarily in Tenn. Code Ann. § 40-39-211. This part of the Act provides in relevant part as follows:

> (a)(1) While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender as defined in § 40-39-202, shall knowingly establish a primary or secondary residence or any other living accommodation or knowingly accept employment within one thousand feet (1,000′) of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field available for use by the general public.
>
> . . . .
>
> (c)(1) While mandated to comply with the requirements of this part, no sexual offender or violent sexual offender, whose victim was a minor, shall knowingly reside or conduct an overnight visit at a residence in which a minor resides or is present. . . .
>
> (d)(1) No sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall knowingly:
>
>> (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present;
>>
>> (B) Stand, sit idly, whether or not the offender is in a vehicle, or remain within one thousand feet (1,000′) of the property line of any building owned

or operated by any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there . . . .

(k) . . . .

(2) Unless otherwise permitted by subsection (c), while mandated to comply with the requirements of this part, no sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall be alone with a minor or minors in a private area.

Tenn. Code Ann. § 40-39-211(a), (c)–(d), (k).

The Director argues that he has no power to enforce these provisions and that the "mere transmission of information to other state officers" does not constitute enforcement of these geographic restrictions. (Doc. No. 161 at 15 (internal quotation marks omitted).) The Sixth Circuit, indeed, observed that the Director's specific responsibilities under the Act to create and maintain the sex offender registry ("SOR") database, disseminate that information to prosecutors and law enforcement, and facilitate other agencies' entry of new data into the SOR are all "functions [that] fall squarely within the legitimate regulatory scheme [that] Tennessee is constitutionally allowed to provide and maintain." *Doe v. Lee*, 102 F.4th at 341. The plaintiffs, moreover, do not challenge the constitutionality of those tasks, *per se*.

At the same time, the Sixth Circuit also recognized the possibility that the Director could "exercis[e] his limited record-keeping powers under Tennessee law in a way that violates Plaintiffs' rights under our Ex Post Facto Clause analysis." *Id.* at 342. As set forth above, other courts have found that state defendants who have some direct "connection with enforcing [a] statutory scheme," *Worth*, 108 F.4th at 684 n.3, or some "scintilla" of responsibility relating to enforcement, *Jackson*, 82 F.4th at 367, fall within the *Ex parte Young* exception. Here, the Director has a clear connection to enforcement. The TBI is directed to set up and maintain the SOR, a

"centralized record system of offender registration, verification and tracking information," Tenn. Code Ann. §§ 40-39-202(22), 40-39-204(a), and it is authorized by statute to "promulgate any necessary rules to implement and administer" the SOR. Tenn. Code Ann. § 40-39-206(f); *see also* Tenn. Comp. R. & Regs. 1395-01-05-.01 ("As an independent department, TBI has been charged with the responsibility of administering and maintaining the [SOR Program], which is civil and remedial in nature."); Tenn. Comp. R. & Regs. 1395-01-05-.03 (same). The TBI, along with other "designated law enforcement agencies," is expressly recognized by the statute as one of the agencies tasked with enforcement of the Act. Tenn. Code Ann. § 40-39-204(a) (referring to the "enforcement of this part," that is, the Act as a whole, by the TBI and other agencies). In addition, the TBI facilitates enforcement by other agencies; under the statute, "[w]henever there is a factual basis to believe that an offender has not complied with [the Act], . . . the TBI shall make the information available through the SOR" to the individuals tasked with criminal enforcement of the act, including the local district attorney and law enforcement agencies.[8] Tenn. Code Ann. § 40-39-206(b); *see also* Tenn. Comp. R. & Regs. 1395-01-05-.06(3) ("If an offender does not comply with the registration/monitoring process requirements, the TBI shall notify the district attorney general and . . . [any] other public office[r] or employee assigned responsibility for the sexual offender's supervised release."). Thus, as the plaintiffs point out, the Director's "enforcement powers under the Act enable and require him to enforce the Act's geographical restrictions by assisting law enforcement agencies in determining who is subject to those restrictions and by notifying offenders of their obligation to comply with those restrictions." (Doc. No. 165 at 12.)

---

[8] In Tennessee, district attorneys general "[s]hall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto." Tenn. Code Ann. § 8-7-103(1).

Under the circumstances presented here, the fact that the Director is not directly charged with criminally prosecuting individuals for violating specific provisions of the Act does not remove him from the reach of *Ex parte Young*. Under the language of *Young* itself, the Director has a "special relation to the particular statute" at issue and is "expressly directed to see to its enforcement." *Ex parte Young*, 209 U.S. at 157; *see id.* ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact."). The Director has a clear "connection with the enforcement of the [Act]," *id.*, rather than a "bare connection to administering [it]," *Russell*, 784 F.3d at 1047.

As set forth above, the TBI is responsible for setting up and maintaining the SOR and is expressly authorized to promulgate rules relating to it and to communicate information about sex offenders through the SOR. Consequently, the Director clearly has the power and the authority—and, indeed, a constitutional obligation—to correct misinformation on the public and private parts of the TBI's database, including misinformation relating to an offenders' obligations to comply with specific parts of the Act. The court notes that it is also within his discretion to design the relevant forms and the SOR system itself to take into consideration constitutional prohibitions on the application of *ex post facto* punishment, but the court has no need—and, as discussed below, likely no authority—to enjoin the Director to exercise his authority to change the format of the forms and the SOR system itself. Regardless, insofar as the Director's responsibilities admittedly include communicating information relating to the plaintiffs' status under the Act to local law enforcement and district attorneys, he can be enjoined from conveying false information—for instance, information designating the plaintiffs as falling within the classifications referenced above or as required to comply with the geographic restrictions in the Act—as conveying false information would constitute "exercising his limited record-keeping powers under Tennessee law

in a way that violates Plaintiffs' rights" under the Ex Post Facto Clause. *Doe v. Lee*, 102 F.4th at 342.

In sum, the Director has a "special relation" to the Act and, by virtue of his office, is "expressly directed to see to its enforcement." *Ex parte Young*, 209 U.S. at 157. He falls within the *Ex parte Young* exception to state sovereign immunity. The Director implicitly recognizes the power of his "limited" record-keeping and information-providing responsibilities and their role in enforcement. As set forth in the Declaration of Shelly Smitherman, Assistant Special Agent in Charge of the Criminal Intelligence Unit and the individual responsible for administration of the TBI's sex offender registry, it is feasible for the TBI to state in the "Status Notes" of each plaintiff's profile maintained in the non-public part of the TBI's database the outcome of this case and the language of any injunction. Smitherman, in fact, proposes the following language:

> The U.S. District Court for the Middle District of Tennessee has deemed certain provisions of Tenn. Code Ann. § 40-39-201 *et seq.* inapplicable to this registrant. Contact TBI for copies of the relevant documents.

(Doc. No. 161-1, Smitherman Decl. ¶ 6.) Not only is this feasible, but some version of it has also apparently already been done.[9] Thus, TBI's informational and record-keeping responsibilities obviously can be deployed to prevent enforcement of the unconstitutional portions of the Act against the plaintiffs in this case.

The court is cognizant that the scope of the injunction as entered must be tailored to the Director's enforcement powers and that the scope of that injunction will not provide the plaintiffs

---

[9] The court's preliminary injunction has remained in effect pending resolution of the present motions, banning enforcement of the Act in its entirety against the plaintiffs. The court takes notice that, in accordance with that directive, the TBI removed all information relating to the plaintiffs named in this case from the public-facing portion of the sex offender registry website—as well as information relating to other successful litigants—and presumably has already included the proposed language in its non-public database.

all the relief they seek, and it may not entirely shield the plaintiffs from the unconstitutional *ex post facto* enforcement of parts of the TSORA against them by actors who are not parties to this lawsuit. But the court can provide the plaintiffs at least partial relief by enjoining the Director from engaging in his affirmative duties under the Act in a way that violates the plaintiffs' constitutional rights, as discussed in greater detail below.

3.    *Causation*

The Director also contends, in what amounts to an extension of his *Ex parte Young* argument, that the plaintiffs cannot prove that the Director is the "but for" cause of any other officer's conduct that may have violated the plaintiffs' rights. The court, again, is not persuaded. The Director enforces the Act—as set forth above—and causes the plaintiffs to be subject to the Act's Ex Post Facto provisions.

**B.    The Equities Favor a Permanent Injunction**

The Director next argues that, even if the court finds that the plaintiffs' claims succeed on the merits, it should decline to issue a permanent injunction, because (1) the equities do not favor such relief; (2) the plaintiffs cannot trace irreparable harm to the Director (*i.e.*, the TBI); and (3) the public interest weighs against permanent injunctive relief. (Doc. No. 161 at 30 (citing generally *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).) The defendant did not raise this argument at the summary judgment stage. On appeal he argued that the injunction as initially awarded by this court was overly broad and touched only briefly on the "relevant equities." Appellant's Opening Brief at 75, *Doe v. Lee*, No. 23-5248 (6th Cir. June 16, 2023), ECF 17.

Regardless of whether this argument is waived, it is without merit. The assertion that the plaintiffs cannot trace their harm to any action taken by Rausch is simply a reprise of the Director's causation/*Ex parte Young* argument. Second, as a matter of law, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Mich. State A. Philip Randolph Inst. v.*

*Johnson*, 833 F.3d 656, 669 (6th Cir. 2016) (citation omitted). As for the public interest, the Director points generally to the State's interest in preventing recidivism and harm to children, but there is no evidence of the likelihood that the eight plaintiffs at issue in this case pose recidivism risks. Moreover, as Judge Richardson of this court recognized in facing a similar challenge, "no cognizable harm results from stopping unconstitutional conduct, so it is always in the public interest to prevent violation of a party's constitutional rights." *Doe #11 v. Lee*, 609 F. Supp. 3d 578, 617 (M.D. Tenn. 2022) (quoting *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021) (internal quotation marks omitted). The court made these findings in ruling on the plaintiffs' Motion for Preliminary Injunction, *Does #1–9 v. Lee*, 574 F. Supp. 3d 558, 563–64 (M.D. Tenn. 2021), and the defendant presents no reason to call that finding into question now, at least with respect to the TSORA provisions relating to the classification of offenders and geographic limitations on their movement and employment.

## C. The Scope of an Injunction

Finally, the Director argues that, if the court grants injunctive relief, it must be "prohibitory and narrow." (Doc. No. 161 at 33.) It is axiomatic that injunctions must be "closely tailor[ed] . . . to the harm that they address." *Singh Mgmt. Co. v. Singh Dev. Co.*, 774 F. App'x 921, 926 (6th Cir. 2019) (quoting *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 595 (6th Cir. 2015)). Further, however, invoking a footnote in a 75-year-old case that, itself, relies on nineteenth century law, the Director asserts that he can be enjoined *from* engaging in unconstitutional conduct, but he cannot be enjoined *to take* any affirmative action. (Doc. No. 161 at 34 (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949)).[10])

---

[10] This footnote states: "Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of

The Sixth Circuit does not appear to have ever cited *Larson* for that proposition, and both the Sixth Circuit and the Supreme Court have, at times, countenanced affirmative relief under *Ex parte Young*. *See, e.g.*, *In re Flint Water Cases*, 960 F.3d 303, 334–35 (6th Cir. 2020) (affirming the denial of the Governor of Michigan's motion to dismiss claims for "prospective injunctive relief to remediate the ongoing harms," including "repairs, medical monitoring, educational programs, and criminal and juvenile justice evaluations [that] are identical to those sought and upheld in [*Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017)]" (citing *Milliken v. Bradley*, 433 U.S. 267, 290 (1977), as holding that, under *Ex parte Young*, courts could order newly integrated schools to implement remedial education programs in order to combat the lasting effects of *de jure* school segregation).

At the same time, *Ex parte Young* itself stated that a court "can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty." *Ex parte Young*, 209 U.S. at 158. And the Sixth Circuit's remand in this case included an instruction that "[t]he only injunction potentially warranted against Director Rausch would be a limited one prohibiting him from exercising his limited record-keeping powers under Tennessee law in a way that violates Plaintiffs' rights under our Ex Post Facto Clause analysis." *Doe v. Lee*, 102 F.4th at 341–42 (emphasis added). Thus, in short, the defendant is basically correct that the court has the power under *Ex parte Young* only to enjoin him from continuing to exercise his authority under the Act in a way that violates the plaintiffs' constitutional rights. But that does not lead to a conclusion that no injunctive relief is

unquestionably sovereign property." *Larson*, 337 U.S. at 691 n.11 (citing *North Carolina v. Temple*, 134 U.S. 22 (1890)).

warranted.

### D.     Conclusion

The defendant has not established that injunctive relief should be denied altogether. Accordingly, his motion will be denied.

## III.    THE PLAINTIFFS' MOTION

### A.     The Classification Provisions

Regarding classification, as suggested above, the court finds that the TSORA, like Michigan's law, imposes "ignominy" that "flows not only from the past offense, but also from the statute itself" by classifying the plaintiffs as "violent sexual offenders," Tenn. Code Ann. § 40-39-202(30), and Doe #5 and Doe #7 as "offenders against children," Tenn. Code Ann. § 40-39-202(10), without individualized assessment. *Accord Snyder*, 834 F.3d at 703. And, as the plaintiffs argue, Michigan's "Tier" classifications are "anodyne" compared to the TSORA's classification of the plaintiffs as "violent sexual offenders" or "offenders against children," terms that express present danger and risk. (*See* Doc. No. 163 at 5.) This court, in a similar case, has already taken "judicial notice of the fact that the phrase 'violent sexual offender,' when affixed to a person without explanation, carries with it a significant stigma." *Reid v. Lee*, 476 F. Supp. 3d 684, 707 (M.D. Tenn. 2020); *see also Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1192–93 (M.D. Tenn. 2021) (holding that the Act, by labeling the plaintiff a "violent sexual offender," "add[ed] ignominy . . . beyond the ignominy otherwise resulting from his convictions"). Likewise, the label "offender against children" may convey more ignominy than is suggested either by the fact that a plaintiff is a registrant or the fact that he committed the particular crime that made him a registrant, insofar as it is applied without regard to how many convictions he has or even whether more than one victim is involved. The classifications are shaming at least to the same extent as the Michigan law and constitute *ex post facto* punishment, as the Sixth Circuit and this court already found.

The court has also already found that the Director has clear enforcement responsibilities related to classification. Under Tenn. Code Ann. § 40-39-218(a), the TBI is required to classify offenders; under subsection (c) it is required to notify each offender of that classification. At a minimum, therefore, the Director can be enjoined from classifying the plaintiffs as "violent sexual offenders" or "offenders against children," and he can be enjoined to exercise his statutory duty in a way that does not violate the plaintiffs' rights by classifying them simply as "sexual offenders" and providing them notice of that classification. That action will also affect the plaintiffs' reporting obligations under the Act going forward and the enforcement, by the Director or others, of those obligations. The Director can also be enjoined from assisting other law enforcement agencies in enforcing any provisions of the Act against the plaintiffs that are based on those classifications. In short, the Director can be enjoined to perform his non-discretionary duties under the Act in a way that does not violate the plaintiffs' constitutional rights, including by ensuring that the SOR reflects the plaintiffs' updated classification going forward and providing notice through the SOR of their updated classification.

In addition to an injunction consistent with the above, the plaintiffs also ask the court to "require [the Director] to notify law enforcement agencies that no provision of the Act may be enforced against a Plaintiff based on his classification as a 'violent sexual offender' or 'offender against children' based on his pre-enactment offense." (Doc. No. 163 at 6–7.) Insofar as the plaintiffs are asking that the Director be required to issue direct notice to each law enforcement agency with oversight of the areas where the plaintiffs live, such an injunction would appear to require affirmative action. As already discussed, the court largely lacks authority under *Ex parte Young* to enjoin the Director to engage in affirmative conduct beyond directing him to perform his statutory duties relating to the SOR in a way that does not violate the plaintiffs' rights under the

Ex Post Facto Clause. But even a limited injunction will go a long way toward providing the plaintiffs relief.

### B. The Act's Geographical Restrictions

The plaintiffs request that the court modify the injunction

> to prohibit [the Director] from enforcing Tenn. Code Ann. §§ 40-39-211(a), (b)(1)–(2), (d)(1)–(2), (h), and (k) and Tenn. Code Ann. § 40-39-216 against any Plaintiff, and from enforcing Tenn. Code Ann. §§ 40-39-211(c) or (d)(3) against Doe #5, Doe #6, or Doe #8, based on his pre-enactment offense, and require [the Director] to notify law enforcement agencies that such restrictions cannot be enforced against any Plaintiff based on his pre-enactment offense . . . .

(Doc. No. 163 at 9.)

Regarding § 40-39-216, this provision states that "[p]ublic library boards shall have the authority to reasonably restrict the access of any person listed on the sexual offender registry" and that "[s]uch authority may be delegated by the board to a library administrator." Tenn. Code Ann. § 40-39-216(a). The statute outlines the criteria a library board must consider to determine the reasonableness of any proposed restrictions and authorizes prosecution for criminal trespass of any sex offender who enters a library after notice of the restrictions, at the library administrator's discretion. *Id.* § 40-39-216(b), (d). The plaintiffs fail to show that the Director has any enforcement authority with respect to this provision. The court, therefore, will deny the request for an injunction that includes a prohibition on enforcement of § 40-39-216.

Section 40-39-211(h) prohibits three or more sexual offenders or violent sexual offenders from "establish[ing] a primary or secondary residence together or inhabit[ing] the same primary or secondary residence at the same time." Tenn. Code Ann. § 40-39-211(h)(1)(A). The plaintiffs have not indicated that they ever established, or intend to establish, a residence or live with two or more other sexual offenders. They have failed to show that an injunction barring enforcement of this provision would have any effect on them, and the court declines to enter an injunction relating

to this part.

Subparts (a), (c)–(d), and (h) of § 40-39-211, as set out above, directly affect the plaintiffs and contain the geographic restrictions that are directly analogous to, or even more punitive than, the Michigan restrictions found to be punitive and therefore unconstitutional in *Snyder*. There is no dispute in this case that all of the plaintiffs' offenses occurred well before the enactment of any part of § 40-39-211 that the plaintiffs challenge, such that enforcement of those parts against the plaintiffs is retroactive by definition. This court also reaffirms its finding that § 40-39-211 is punitive, such that enforcing it retroactively against the plaintiffs violates the Ex Post Facto Clause. Finally, the court has found that the Director is directly implicated in the enforcement of § 40-39-211 and can be enjoined from continuing to enforce it against the plaintiffs.

As discussed above, however, the court's power to enjoin the Director to engage in affirmative conduct is more limited than the plaintiffs recognize, but the court will grant the plaintiffs' request that the Director be enjoined from continuing to engage in unconstitutional conduct and enjoined to ensure that he conducts his duties under the Act in a way that does not continue to violate the plaintiffs' rights under the Ex Post Facto Clause, as set out in greater detail below.

### C. Other Provisions of the Act

The plaintiffs have enumerated other provisions of the Act that they maintain are punitive and violate the Ex Post Facto Clause generally, but their arguments regarding these other provisions are entirely perfunctory. They have failed to show that other provisions are actually punitive under existing law or, even if they were, that the plaintiffs would be entitled to a permanent injunction relating to those provisions.

For instance, the Sixth Circuit held that the reporting requirements in the TSORA are not equivalent to the "immediate" reporting requirements at issue in the Michigan SORA

amendments,[11] and the court finds that the TSORA's reporting requirements in § 40-39-203 are not punitive, particularly taking into account that the plaintiffs should, going forward, no longer be subject to the additional reporting requirements imposed on offenders classified as "violent sexual offenders" or "offenders against children."

Several of the reporting provisions the plaintiffs challenge pertain to homeless individuals, *see, e.g.*, Tenn. Code Ann. §§ 40-39-203(f), 40-39-204(g), but none of the plaintiffs indicates that he is, ever has been, or anticipates being homeless. Similarly, none of the plaintiffs indicates an intent or desire to dress in costume or to rent a swimming pool or hot tub. *Id.* § 40-39-215. They have not established the need for a permanent injunction regarding these provisions.

Another provision, in effect since 2008, requires every offender to submit a DNA sample, if one has not already been collected, at the time of the offender's initial registration under the Act. Tenn. Code Ann. § 40-39-203(n). All of the plaintiffs in this case have been subject to (and in compliance with) the TSORA for many years, and none indicates that he has not already complied with this provision. If each plaintiff has already provided a DNA sample, then a prospective injunction prohibiting the enforcement of this provision against them would have no utility.

More generally, none of the plaintiffs has established that the enforcement of any of the provisions of the TSORA—apart from those related to classification and geographic restrictions addressed above—would result in irreparable injury, as necessary for entitlement to a permanent injunction. The request for an injunction barring the enforcement of these provisions of the TSORA will be denied.

---

[11] In *Doe v. Lee*, the court stated that *Snyder* "does not call into question Tennessee's in-person reporting requirements" as Michigan's requirements are "more onerous." 102 F.4th at 339 n.2.

### D.   Modified Injunction

Keeping in mind the parameters set forth above, the court will dissolve the temporary injunction now in effect and enter a permanent injunction as follows:

1.   The Director shall perform his affirmative duty under the Act to classify the plaintiffs in a manner that does not violate the Ex Post Facto Clause of the U.S. Constitution, meaning that he may classify them as generic "sexual offenders," but he shall no longer classify them as either "violent sexual offenders" or "offenders against children"; he shall perform his affirmative duty under the Act to notify the plaintiffs of their updated classification; and he will be enjoined from permitting the TBI to enter, modify, or maintain data in the SOR that would cause any plaintiff to be classified as a "violent sexual offender" under Tenn. Code Ann. § 40-39-202(30) or that would cause Doe #5 or Doe #7 to be classified as an "offender against children" under Tenn. Code Ann. § 40-39-202(10), based on offenses committed prior to enactment of those provisions ("pre-enactment offenses").[12]

2.   The Director shall cause the TBI to promptly modify the SOR to immediately and automatically notify any person authorized to enforce the Act who submits data to, or requests data from, the SOR about any plaintiff, or who contacts the TBI about any plaintiff's obligation to comply with the Act, that none of the plaintiffs is classified as a "violent sexual offender" under the Act and neither Doe #5 nor Doe #7 is classified as an "offender against children" under the Act, making the portions of the Act pertaining to offenders with those classifications inapplicable to them;

3. The Director shall not assist any law enforcement agency to enforce any provision of the Act based on any plaintiff's classification as a "violent sexual offender" or "offender against children" based on his pre-enactment offense;

4.   The Director shall cause the TBI to promptly notify, and to promptly modify the SOR to immediately and automatically notify, any person authorized to enforce the Act who submits data to, or requests data from, the SOR about any plaintiff, or who contacts the TBI about any plaintiff's obligation to comply with the Act, and to the extent the TBI publishes plaintiff's information on the SOR, the Director shall cause the TBI to publish with that information a notice, that:

a.   Tenn. Code Ann. § 40-39-211(a)'s residential and employment restrictions with respect to a public school, private or parochial school, licensed day care center, or other childcare facility do not apply to any plaintiff based on any pre-

_____

[12] It is undisputed that all of the plaintiffs' qualifying offenses are "pre-enactment offenses," insofar as they were committed years before the enactment of the TSORA provisions the plaintiffs challenge. The court, therefore, finds no need to include here the passage date of each individual provision.

enactment offense;

b.  Tenn. Code Ann. § 40-39-211(a)'s residential and employment restrictions with respect to a public park, recreation center, or public athletic field available for use by the general public do not apply to any plaintiff based on a pre-enactment offense;

c.  Tenn. Code Ann. § 40-39-211(a)'s residential and employment restrictions with respect to a playground, defined as an indoor or outdoor facility that is intended for recreation of children and owned by the state, a local government, or a not-for-profit organization, and includes any parking lot appurtenant to the indoor or outdoor facility, do not apply to any plaintiff based on any pre-enactment offense;

d.  Tenn. Code Ann. § 40-39-211(b)(1)–(2) do not apply to any plaintiff based on a pre-enactment offense;

e.  Tenn. Code Ann. § 40-39-211(c)'s restriction on residing where a minor resides does not apply to any plaintiff based on a pre-enactment offense;

f.  Tenn. Code Ann. § 40-39-211(c)'s restriction on overnight visits where a minor resides does not apply to any plaintiff based on a pre-enactment offense;

g.  Tenn. Code Ann. § 40-39-211(d)'s restrictions on proximity to a public, private, or parochial school do not apply to any plaintiff based on a pre-enactment offense;

h.  Tenn. Code Ann. § 40-39-211(d)'s restrictions on proximity to a licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public do not apply to any plaintiff based on a pre-enactment offense; and

i.  Tenn. Code Ann. § 40-39-211(k)'s restrictions on proximity to minors do not apply to any plaintiff based on a pre-enactment offense.

## IV.    CONCLUSION

As set forth in this opinion, the Director's Motion for a Denial of Injunctive Relief (Doc. No. 160) will be denied, and the plaintiffs' Motion to Modify Injunction (Doc. No. 162) will be granted in part and denied in part. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge